IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARIETTA AREA HEALTHCARE, INC., et al.,

      Plaintiffs,

v.                                Civil Action No. 5:23-cv-131
                                      Judge Bailey

CAMDEN-CLARK MEMORIAL HOSPITAL
CORPORATION, et al.,

      Defendants.

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendants Camden-Clark Memorial Hospital Corp.; Camden-Clark Health Services, Inc.; West Virginia United Health System, Inc, d/b/a West Virginia University Health System; and West Virginia University Hospitals, Inc. ("Camden-Clark/WVUHS") submit this memorandum in support of their Motion to Dismiss Plaintiffs Marietta Area Healthcare, Marietta Memorial Hospital, and Marietta Healthcare Physicians, Inc.'s ("Marietta's") Second Amended Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

This is Marietta's second attempt to avenge the *Qui Tam* filed against it by Relators Michael A. King and Dr. Michael D. Roberts ("Relators") under the False Claims Act, 31 U.S.C. §§ 3729 – 3733 ("FCA"). *See United States ex rel. King et al.*, 5:16-cv-175 (N.D. W. Va.) ( "*Qui Tam*"). From September 2020 to May 2023, Marietta pursued a tort case against Relators and a third individual, Todd A. Kruger, for alleged harm from the *Qui Tam* and the United States's FCA investigation. *See Marietta Area Healthcare, Inc., et al. v. Michael A. King, et al.*, 2:20-cv-639 (S.D. W. Va.); 5:21-cv-25 (N.D. W. Va.) ("*Marietta I*"). While *Marietta I* was still pending, Marietta filed this suit ("*Marietta II*") against Camden-Clark/WVUHS seeking redress for the

identical injuries arising from the same common nucleus of operative facts as *Marietta I*. Marietta's litigation tactics flout well-established principles of *res judicata*. Marietta's claims are further barred by preemption, public policy, lack of causation, and statutes of limitation. Marietta also cannot state valid claims for relief.

## I.   Background.

*Qui Tam*. On November 22, 2016, Relators filed a *Qui Tam* against Marietta under seal in the U.S. District Court for the Northern District of West Virginia ("Northern District") challenging Marietta's compensation and recruiting practices under the FCA.[1] The action was stayed under 31 U.S.C. §3730(b)(2) while the Department of Justice ("DOJ") investigated. During the investigation, the *Qui Tam* court repeatedly extended the stay under 31 U.S.C. § 3730(b)(3).[2]

As Marietta explains: "The government, if it chooses, may intervene in a *qui tam* action and proceed with it. The government may also dismiss a *qui tam* action if it sees fit."[3] Here, the government ultimately decided not to intervene.[4] On March 23, 2020, upon Relators' request and with DOJ's consent, the Court dismissed the *Qui Tam* without prejudice.[5] The docket was unsealed on April 24, 2020.[6]

---

[1] The *Qui Tam* Complaint is attached to the various complaints in both *Marietta I* and *II*.

[2] Reportedly, the investigation lasted from November 22, 2016, to March 23, 2020, and the DOJ asked the *Qui Tam* Court for (and apparently received) six 180-day extensions. Ex. A, Defs.' Mem. Supp. Mot. Summ. J., *Marietta I* at 6 (N.D. W. Va. Jan. 3, 2023), ECF No. 329.

[3] Second Am. Compl., *Marietta II* (July 31, 2023), ECF No. 28, ¶ 51 (citations omitted); *see also* 31 U.S.C. § 3730(b)(4), (c)(2)(A).

[4] Second Am. Compl., *Marietta II* ¶ 7.

[5] Ex. B, Relators' Notice of Voluntary Dismissal Without Prejudice, *Qui Tam* (Mar. 20, 2020), ECF No. 42; Ex. C, United States' Notice of Consent to Dismissal, *Qui Tam* (Mar. 20, 2020), ECF No. 41; Ex. D, Order, *Qui Tam*, (Mar. 23, 2020), ECF No. 43.

[6] Ex. E, Am. Order, *Qui Tam* (Apr. 24, 2020), ECF No. 45.

***Marietta I.*** Five months after the *Qui Tam* docket became public, Marietta sued Relators.[7] Marietta alleged Relators manufactured false and unsupported *Qui Tam* allegations,[8] and asserted claims for malicious prosecution, tortious interference, abuse of process, and fraudulent legal process.[9] Marietta identified Relator King as "a former officer of Camden Clark Medical Center …, a hospital located in Parkersburg, West Virginia[]" and Relator Roberts as "a general surgeon in private practice in Parkersburg, West Virginia."[10] On February 3, 2022, Marietta moved to amend its complaint to add Kruger as a *Marietta I* defendant and to assert a conspiracy claim against all defendants.[11] Marietta identified Kruger as the "Vice-President and General Counsel to Camden Clark Health Services, Inc. located in Parkersburg, West Virginia"[12] and claimed he was a "fellow – but unnamed relator."[13] The Court granted leave to amend.[14]

Marietta settled with Relators before trial.[15] Marietta and Kruger conducted a jury trial from March 27 to 31, 2023, which ended in a mistrial.[16] Marietta and Kruger then reached a settlement. On May 18, 2023, the Court dismissed Kruger with prejudice and closed the case.[17]

---

[7] Ex. F, Compl., *Marietta I* (S.D. W. Va. Sept. 25, 2020), ECF No. 4.

[8] *Id.* ¶¶ 1 - 6, 13, 33, 35, 49 – 51, 62, 64.

[9] *See id.* ¶¶ 69 - 98.

[10] *Id*. ¶¶ 10 - 11.

[11] Ex. G, Pls.' Mot. Leave File Am. Compl., *Marietta I* (N.D. W. Va. Feb. 3, 2022), ECF No. 97.

[12] Ex. H, Am. Compl., *Marietta I* (N.D. W. Va. Feb. 11, 2022), ECF No. 107, ¶ 12.

[13] Ex. G, Pls.' Mot. Leave File Am. Compl., *Marietta I* at 5.

[14] Ex. I, Order, *Marietta I* (N.D. W. Va. Feb. 11, 2022), ECF No. 105.

[15] *See* Ex. J, Joint Mot. Dismiss Michael D. Roberts, M.D., *Marietta I* (N.D. W. Va. Feb. 24, 2023), ECF No. 428; Ex. K, Order, *Marietta I* (N.D. W. Va. Feb. 24, 2023), ECF No. 429; Ex. L, Joint Mot. Dismiss Michael A. King, *Marietta I* (N.D. W. Va. Mar. 24, 2023), ECF No. 490; Ex. M, Order, *Marietta I* (N.D. W. Va. Mar. 24, 2023), ECF No. 491.

[16] *See* Northern District Docket Minute Entries, ECF Nos. 492, 495, 496, 499, 508.

[17] *See* Ex. N, Proposed Order Dismissing Todd A. Kruger, *Marietta I* (N.D. W. Va. May 17, 2023), ECF No. 546; Ex. O, Order, *Marietta I* (N.D. W. Va. May 18, 2023), ECF No. 547.

*Marietta II.* On April 5, 2023, while *Marietta I* was still pending, Marietta filed *Marietta II* against the Camden-Clark entities, repeating five of the *Marietta I* claims – malicious prosecution, tortious interference, abuse of process, fraudulent legal process, and civil conspiracy – and asserting two "new" claims for aiding and abetting allegedly tortious conduct and vicarious liability.[18] On May 1, 2023, Marietta filed the First Amended Complaint adding the WVUHS defendants, which Camden-Clark/WVUHS moved to dismiss.[19] With the Court's permission, Marietta filed a Second Amended Complaint on July 31, 2023, which asserted an additional claim for negligent supervision but no new factual allegations.[20]

All of Marietta's claims in *Marietta II* are based on the events from *Marietta I* – alleged authorization of, involvement in, or responsibility for the *Qui Tam*; actions taken by Relators and Kruger; and the United States' FCA investigation.

## II.    Standard of Review.

A motion to dismiss tests a complaint's sufficiency. *See King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Dytko v. Chesapeake Appalachia, LLC*, No. 5:13-cv-150, 2016 U.S. Dist. LEXIS 96466, *7 (N.D. W. Va. July 25, 2016). The complaint must contain sufficient factual allegations to state a "plausible claim for relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 - 679 (2009); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "Well-pled allegations" are taken as true, and the Court construes "the facts and reasonable inferences derived therefrom in the light

---

[18] Compl., *Marietta II,* (Apr. 5, 2023), ECF No. 1.

[19] Mot. To Dismiss, *Marietta II*, (Jun. 30, 2023), ECF No. 16. Marietta moved for leave to file a second amended complaint on July 28, 2023, which the Court granted July 31, 2023, rendering Camden-Clark/WVUHS's motion to dismiss moot. Mot. to File Second Am. Compl., *Marietta II*, ECF No. 25; Order, *Marietta II,* (Jul. 31, 2023), ECF No. 27. Marietta also had moved for leave to file its response to the motion to dismiss under seal, which the Court denied as moot. *See* Order, *Marietta II* (Jul. 31, 2023).

[20] Second Am. Compl., *Marietta II*, ¶¶ 132 - 37.

most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The Court need not accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" nor "unwarranted inferences, unreasonable conclusions, or arguments." *Dytko*, 2016 U.S. Dist. LEXIS 96466, at \*7 (internal quotation marks omitted).

On a motion to dismiss, the Court may consider matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 - 07 (4th Cir. 2015). This includes the *Qui Tam* complaint and the *Marietta I* pleadings and papers. *O'Gara v. Hunter (In re Hunter)*, 610 B.R. 479, 491 (Bankr. M.D. N.C. Nov. 8, 2019); *Benson v. High Rd. Operating, LLC*, No. 5:20-cv-00229, 2022 U.S. Dist. LEXIS 107073, \*7 - 8 (N.D. W. Va. Jun. 15, 2022); *Brown v. Ocwen Loan Serv., LLC*, No. PJM-14-3454, 2015 U.S. Dist. LEXIS 110133, \*4, n.3 (D. Md. Aug. 20, 2015). Moreover, federal courts in the Fourth Circuit and beyond have dismissed complaints based on affirmative defenses without converting the motion into one for summary judgment where the allegations in the complaint, "documents attached or incorporated into the complaint," and matters of public record reveal that plaintiff has failed to state a claim upon which relief can be granted. *Halscott Megaro, P.A. v. McCollum*, 66 F. 4th 151, 157 - 59 (4th Cir. 2023) (citing *E.I, du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F. 3d 435, 448 (4th Cir. 2011) and *Pitt*, 572 F. 3d at 180); *see also Mua v. Maryland*, Civil Action No.: ELH-16-01435, 2017 U.S. Dist. LEXIS 21813, \* 12 - 15 (D. Md. Feb. 15, 2017); *Kowalsky v. Deutsche Bank Nat'l Trust Co.*, Civil Action No.: 14-07856, 2015 U.S. Dist. LEXIS 133284, \*16 - 18, n. 6 (D. N.J. Sept. 30, 2015).

III.   **Argument.**

A.   ***Res Judicata* (Claim Preclusion) Bars This Suit.**

Marietta should have named Camden-Clark/WVUHS as defendants in *Marietta I*; its piecemeal and serial litigation strategy justifies invocation of the *res judicata* bar. The *res judicata* doctrine "protect[s] litigants against gamesmanship and the added litigation costs of claim-splitting and prevent[s] scarce judicial resources from being squandered in unnecessary litigation." *Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 12 (1st Cir. 2010). "*Res judicata* precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 803 S.E.2d 519, 529 (W. Va. 2017) (emphasis added) (internal quotation marks omitted). "Its purposes are both equitable and practical: to protect litigants from the burden of relitigating identical issues, and to promote judicial economy by preventing needless litigation." *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 913 (D. Md. 2009) (internal quotation marks omitted). "Those interests are especially implicated … where the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Airframe Sys.*, 601 F.3d at 14; *see also Conley v. Spillers*, 301 S.E.2d 216, 219 (W. Va. 1983) (*res judicata* "prevent[s] a person from being twice vexed for one and the same cause," protects parties from "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (internal quotation marks omitted).

The term *res judicata* has been modernized and is frequently replaced by the phrase "claim preclusion." *Baker v. Chemours Co. FC, LLC*, 855 S.E.2d 344, 348 (W. Va. 2021). Whatever label applies, the principle is the same: if (i) an earlier suit resulted in a final judgment on the merits by a court having jurisdiction over the proceedings, (ii) the parties in the two cases are identical or

sufficiently closely related ("in privity"); and (iii) the causes of action in a second suit are identical or sufficiently related to those in the first such that "it could have been resolved, had it been presented, in the prior action," *res judicata* prohibits the second case. Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr.*, 498 S.E.2d 41, 48 - 49 (W. Va. 1997).[21]

"[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Richardson v. Church of God Int'l*, No. 1:13-cv-21821, 2014 U.S. Dist. LEXIS 116973, *6 - 7 (S.D. W. Va. Aug. 22, 2014) (emphasis added) (internal quotation marks omitted); *accord Zappin v. Ramey*, No. 3:22-cv-00080, 2022 U.S. Dist. LEXIS 237294, *47 - 49 (S.D. W.Va. Oct. 27, 2022). There can be no dispute over the facts underlying *res judicata* here.

### 1.   *Marietta I* ended with a final adjudication on the merits.

It should be beyond dispute that *Marietta I* ended with a final adjudication on the merits after the parties reached agreements to settle and the Court dismissed the case with prejudice. A "consent judgment" after a settlement agreement is "for claim preclusion purposes, a final one on the merits." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990); *accord Jacobs*, 596 F. Supp. 2d at 914; *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1120 (S.D.N.Y. 1986), *aff'd* 822 F.2d 14 (2nd Cir. 1987), *superseded by statute on other grounds recognized in U.S. Fire Ins. Co.*

---

[21] Related equitable doctrines bar similar gamesmanship because "generally … a single or entire cause of action may not be divided or split so as to make it the subject of several actions, without the express or implied consent of the person against whom the cause of action exists." *Estate of Jones v. City of Martinsburg*, Nos. 18-0927, 18-1045, 2020 W. Va. LEXIS 709, *21 - 22 (W. Va. Oct. 30, 2020) (applying the claim-splitting doctrine and citing authorities explaining that the rule "promotes fairness to the parties" and "is in harmony with public policy and the tendency toward simplicity and directness in the determination of controversial rights and the elimination of multiplicity of suits") (internal quotation marks omitted); *see also Howell v. Luckey*, 518 S.E.2d 873, 877 (W. Va. 1999) ("The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice – to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts.").

*v. United Limousine Serv.*, 328 F. Supp. 2d 450 (S.D.N.Y. 2004); *Mills v. E. Gulf Coal Preparation Co., LLC*, No. 5:08-0260, 2011 U.S. Dist. LEXIS 25764, *3, 10 - 11 (S.D. W. Va. Feb. 22, 2011). Camden-Clark/WVUHS, even though they were not parties to *Marietta I*, satisfy the final adjudication prong because Marietta alleges Camden-Clark/WVUHS conspired with, negligently supervised, aided and abetted, and are "derivatively or vicariously liable for the conduct of . . ." the *Marietta I* defendants.[22]  *Pavarini McGovern, LLC v. Waterscape Resort  LLC*, 544 B.R. 507, 517 - 19 (Bankr. S.D. N.Y. 2016).

### 2. Marietta's allegations (taken as true) establish privity.

The final adjudication in *Marietta I* applies with equal force against Camden-Clark/WVUHS because Marietta alleges that they are in privity with Kruger and  Relators. A plaintiff may sue one or more defendants who are allegedly liable for a loss, and subsequently bring another suit against new defendants for the same loss, *except* where there is a sufficiently close relationship or "privity" between the former defendants bound by the first suit and the new defendants named in the second. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017). Privity is an elastic, functional analysis that asks whether the relationship is sufficiently close between a party on the record and another. *See Dytko*, 2016 U.S. Dist. LEXIS 96466 at *17 - 18; *Gribben v. Kirk*, 466 S.E.2d 147, 157,  n.21 (W. Va. 1995).

This close relationship exists where (as here) plaintiff alleges that current defendants conspired or acted in unison with prior defendants. *See, e.g., Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240 – 43, n.11 (finding privity where plaintiff treated the past and present defendants "as the same entity and seeks to hold them liable for the same conduct"); *In re El San Juan Hotel Corp.*, 841 F.3d 6, 10 - 11 (1st Cir. 1988) (applying *res judicata* to defendants that allegedly

---

[22] Second Am. Compl., *Marietta II*, Counts V, VI, VII & VIII.

committed joint harms); *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3rd Cir. 1972) (holding that where the second case asserted the same conspiracy against new defendants, "the second complaint was merely a repetition of the first cause of action" and was barred); *Cahill*, 659 F. Supp. at 1120 - 23 (barring a suit where plaintiff sued an alleged co-conspirator seeking the same relief as in an earlier suit); *RSM Prod. Corp. v. Freshfields Brackhaus Deringer US LLP*, 800 F. Supp. 2d 182, 193 - 94 (D. D.C. 2011) (same); *Discon Inc. v. Nynex Corp.* 86 F. Supp. 2d 154, 166-67 (W.D. N.Y. 2000) (same); *Davenport v. Casteen*, 878 F. Supp. 871, 876 (W.D. Va. 1995) (same). These courts found privity based solely on plaintiff's allegations, which courts take as true under 12(b)(6).

The viability of Marietta's claims depends on its allegations that (i) Camden-Clark/WVUHS, Relators, and Kruger acted in concert and conspiracy with one another, (ii) Camden-Clark/WVUHS aided and abetted Relators' and Kruger's actions, (iii) Camden-Clark/WVUHS are vicariously responsible for Kruger; and (4) Camden-Clark/WVUHS negligently supervised Kruger "and [unnamed] others"[23] (all of which Camden-Clark/WVUHS will dispute if this case proceeds, but that dispute is not relevant to a 12(b)(6) motion). Only one conspiracy is alleged, and the only alleged members of that conspiracy are the *Marietta I* and *II* defendants. *McLaughlin v. Bradlee*, 599 F. Supp. 839, 848 (D.D.C. 1984), *aff'd,* 803 F.2d 1197 (D.C. Cir. 1986). Taking the allegations in Marietta's Second Amended Complaint as true for purposes of this Motion, Camden-Clark/WVUHS are in privity with Relators and Kruger. As the Tenth Circuit has recognized in a similar context, plaintiffs like Marietta cannot have it both ways – either Camden-Clark/WVUHS are in privity for liability and *res judicata* purposes or they are not in privity for either purpose. *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1243.

---

[23] Second Am. Compl., *Marietta II*, ¶¶ 132 - 137.

### 3.    The causes of action in the two cases are sufficiently similar.

A "cause of action" for *res judicata* is defined broadly as "the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief." *Dan Ryan Builders*, 803 S.E.2d at 530 (internal quotation marks omitted); *see also Keith*, 900 F.2d at 739 - 40 (using a transactional approach to judge identity of claims). The crux is "whether the causes of action arise out of a common nucleus of operative facts," *Airframe Sys.*, 601 F.3d at 15, such that the same evidence would support both actions. *Dan Ryan Builders*, 803 S.E.2d at Syl. Pt. 3. If courts focused on the labels of claims, "we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that a single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (alteration and internal quotation marks omitted). Despite the addition of three newly-labeled claims, the causes of action are identical because *Marietta I* and *II* arise out of the same alleged transactions and facts (the *Qui Tam,* the United States's FCA investigation , and the actions of Kruger and Relators).

Additionally, *res judicata* extends to claims which could have been litigated in the prior action (*i.e.*, that were "previously available" to the claimant). *Dytko*, 2016 U.S. Dist. LEXIS 96466, at *14; *see also Airframe Sys.*, 601 F.3d at 14; *Blake*, 498 S.E.2d at 49. To the extent the Court finds that the aiding and abetting, vicarious liability, or negligent supervision claims are "new" (which they are not under the appropriately broad definition of "cause of action"), Marietta still could have asserted those claims against Camden-Clark/WVUHS in *Marietta I*, sparing this waste of judicial resources.

### C.    Marietta Fails to Adequately Plead Any Exemption to *Res Judicata*.

Marietta alleges Camden-Clark/WVUHS "intentionally concealed" its "support and sanctioning" of the *Qui Tam* action,[24] but that does not save Marietta's claims from dismissal. Federal Rule of Civil Procedure 9(b) requires that averments of fraud be plead with specificity and applies to state law claims where fraud is an essential element, affirmative defenses thereto, and any and all averments of fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1103 - 05 (9th Cir. 2003) (collecting cases with similar holdings from the First, Sixth, Eighth and Nineth Circuits); *Belvins v. Booker*, Case No. 1:17CV00012, 2017 U.S. Dist. LEXIS 83637, *17 - 20 (W.D. Va. Jun. 1, 2017) (same). So, while there is a "fraud exception to *res judicata* . . . given the heightened pleading standard of Fed. R. Civ. P. 9(b)," a plaintiff is required to adequately plead averments of fraud or mistake in its complaint to withstand dismissal under Fed. R. Civ. P. 12(b)(6), and, " . . . at a minimum, the [fraud averments must] describe the time, place, and contents of the false [or misleading] representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Mua*, 2017 U.S. Dist. LEXIS 21813 at *39 (emphasis added); *see also Mohr v. Deutsche Bank Nat'l Trust Co.*, Civ. No. 16-00493, 2019 U.S. Dist. LEXIS 99573, *17 - 19 (D. Haw. Jun. 13, 2019); *Croston v. Emax Oil Co.*, Syl. Pt. 4, 195 W. Va. 86, 91, 464 S.E. 2d 728, 733 (W.Va. 1995).

Marietta is required to plead the fraud exemption to *res judicata* in its complaints with the requisite particularity to avoid dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b). Marietta's only allegations concerning Camden-Clark/WVUHS that could arguably support a fraud exception are bare, conclusory assertions that Camden-Clark/WVUHS "intentionally concealed" their support in *Marietta I*,[25] which are legally insufficient to plead fraud with the necessary particularity.

---

[24] Second Am. Compl., *Marietta II*, ¶¶ 78, 81.
[25] Second Am. Compl., *Marietta II* ¶¶ 78, 81.

11

Significantly, the three Complaints Marietta has filed in this action are all silent as to whether the allegations about Camden-Clark/WVUHS were undiscovered, unknown, unknowable, or undiscoverable during *Marietta I*. *Baker*, 855 S.E.2d at 352. Further, any such claim would be farcical. To illustrate, the *Marietta I* Complaints are replete with references to Camden-Clark (20 references in the initial Complaint and 21 in the Amended Complaint); Marietta issued a third-party subpoena to Camden-Clark in *Marietta I*; and Camden-Clark/WVUHS were referenced at trial 563 times (excluding *voir dire*). *See* Exs. P, Notice of Intent to Serve Subpoena, *Marietta I* (N.D. W. Va. May 10, 2022), ECF No. 156; Ex. Q, Subpoena Returned Executed, *Marietta I* (N.D. W. Va. May 17, 2022), ECF No. 161.

*       *       *       *

In sum, Marietta wrongly seeks another bite at the proverbial apple. Failure to dismiss this case would wrongly empower plaintiffs like Marietta "to avoid the doctrine of *res judicata* by the simple expedient of not naming all possible defendant in [its] first action." *Elbert v. Carter*, 903 F.3d 779, 784 (8th Cir. 2018) (emphasis added) (internal quotation marks omitted). Moreover, there is "'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001).

## B. The FCA Bars Marietta's Claims.

Should the Court determine that *res judicata* does not apply, there are ample other grounds for dismissal, including under the FCA.

### 1. The FCA preempts these claims.

The FCA offers a statutory remedy for successful relators and so preempts state tort claims. Preemption was extensively briefed in *Marietta I*, and Camden-Clark/WVUHS endorse and incorporate those arguments by reference.[26, 27]

### 2.    Marietta's claims are barred by the FCA's public policy.

Independent of preemption, Marietta's claims also are barred by public policy because Marietta's FCA liability, and the related question of the truth or falsity of Relators' and Kruger's allegations, is unresolved. Claims against relators, including those alleged to be acting with relators,[28] are prohibited if they allow a liable *qui tam* defendant to obtain contribution or indemnification. *See United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 26 - 29 (D.D.C. 2007). This is true "even when they wrap their claim in the garb of another cause of action." *Id.* at 29; *see also, e.g., Mortgages*, *Inc. v. United States Dist. Court,* 934 F.2d 209, 212 - 14 (9th Cir. 1991). FCA defendants thus may pursue claims against relators *only if* they

---

[26] Camden-Clark/WVUHS adopt the preemption arguments from Marietta I, including but not limited to those raised in Ex. R, Defs.' Mem. Supp. Joint Mot. Dismiss or Transfer, *Marietta I* (S. D. W. Va.), ECF No. 14; Ex. S, Defs.' Reply Supp. Joint Mot. Dismiss, *Marietta I* (S.D. W. Va. Jan. 19, 2021), ECF No. 20; Ex. T, Defs.' Mem. Supp. Joint Mot. Dismiss, Marietta I (N.D. W. Va. Mar. 25, 2021), ECF No. 31; Ex. U, Defs.' Joint Reply Plfs.' Resp. Mot. Dismiss, *Marietta I* (N.D. W. Va. Apr. 15, 2021), ECF No. 37; Ex. V, Defs.' Mem. Supp. Joint Mot. Reconsideration, *Marietta I* (N.D. W. Va. May 26, 2021), ECF No. 48; Ex. W, Defs.' Reply Supp. Joint Mot. Reconsideration, Marietta I (N.D. W. Va. June 16, 2021), ECF No. 50. To the extent these arguments were also raised in filings made under seal (e.g., Dkts. 118, 126), those arguments are incorporated. Camden-Clark/WVUHS respectfully submit that the Court's rejection of preemption was misguided. However, if the Court continues to rejects this position, or the FCA policy and causation grounds for dismissal advanced for the first time, Camden-Clark/WVUHS request certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

[27] Marietta previously argued that if the FCA preempted its claims, it would be left with no recourse for the allegedly false and unsupported *Qui Tam*. *See* Pls.' Resp. Mot. Dismiss at 14 (Dkt. 36) (Apr. 8, 2021). But Marietta could have sought to modify or quash the government's civil investigatory demands (CIDs) under 31 U.S.C. § 3733(j)(2). *See Ortiz v. Todres & Co., LLP*, No. 15 Civ. 1506, 2019 U.S. Dist. LEXIS 41701, at *16 n.3 (S.D.N.Y. Mar. 14, 2019). The FCA also provides a remedy for prevailing *qui tam* defendants if the action "was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment" under 31 U.S.C. § 3730(d)(4).

[28] Although outside the scope of this Motion, Camden-Clark/WVUHS deny they were involved in the *Qui Tam* or aided and abetted/acted in conspiracy with Relators and Kruger.

are first found not liable under the FCA. *Miller*, 505 F. Supp. 2d at 26 – 29. Otherwise, such claims could "punish *innocent* relators, which would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud." *Id.* at 28. To avoid offending the FCA's bar against contribution/indemnification, courts therefore bifurcate those claims from the antecedent determination of FCA liability.[29] If defendants are found liable under the FCA, the claims are dismissed "on the ground that they will have the effect of providing for indemnification or contribution." *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993). If defendants are found not liable, the claims against relators are then addressed on their merits. *Id.*; *see also United States ex rel. Stephens v. Prabhu*, No. CV-S-92-653, 1994 U.S. Dist. LEXIS 21763, *2 - 3 (D. Nev. Dec. 14, 1994). This avoids offending public policy because "[o]nce the question of FCA liability has been determined in the defendant's favor there is less of the risk, envisioned by *Mortgages* and other cases, of deterring would-be relators, and no risk that a wrongdoer will be allowed to shift its costs." *Miller*, 505 F. Supp. 2d at 28.

Here, there is no such safeguard available. The FCA allegations have not been resolved. Marietta asserts it has been "cleared" and "vindicated,"[30] but no judge or jury made this finding. The government expressly left the door open by consenting to dismissal "*without prejudice to the rights of the United States*" due to "its determination that such a dismissal is commensurate with the public interest and that the matter does not warrant the continued expenditure of government resources to pursue or monitor the action *based on currently available information*."[31] As the Fourth Circuit recognized, "Section 3730(b)(1)'s consent-for-dismissal provision … allows the

---

[29] Such claims are generally asserted as counterclaims or third-party claims in an FCA action; the circumstances in *Marietta I* and *II* appear to be *sui generis*.

[30] Second Am. Compl., *Marietta II*,  ¶¶ 6 - 7.

[31] Ex. C, United States' Notice of Consent to Dismissal, *Qui Tam* (emphasis added). Consent is required by 31 U.S.C. § 3730(b)(1).

government to … protect its ability to prosecute matters in the future." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330 (4th Cir. 2017); *see also Borzilleri v. Bayer Healthcare Pharms., Inc.*, 24 F.4th 32, 44 (1st Cir. 2022) ("The FCA does not necessarily prevent the government from later filing suit to pursue the substance of the claims in a dismissed *qui tam* action if the government later determines that such a suit is appropriate.") (emphasis added).[32]

Public policy would be offended if Marietta's claims were permitted to proceed. Marietta later could be found liable for the same conduct at issue in the dismissed-without-prejudice *Qui Tam* and, if successful here, would have impermissibly obtained indemnification/contribution from those alleged to be acting essentially as relators, Camden-Clark/WVUHS. Public policy is further jeopardized because this case will deter future relators by the (now-twice-realized) threat of tort litigation, "imperil[ing] the government's ability to detect, punish, and deter fraud." *Miller*, 505 F. Supp. 2d. at 28. This Court also should not adjudicate the truth of the FCA allegations (and essentially, Marietta's FCA liability) in this collateral proceeding where the government is not a participant. (Indeed, the *Marietta I* trial focused on the foundation (or lack thereof) for the *Qui Tam* allegations and Plaintiffs indicate they will again attempt to relitigate the *Qui Tam* in this case.) This could prejudice any future FCA action against Marietta. For these reasons, the Court should dismiss this case with prejudice as contrary to public policy.

### 3.    Marietta's claims also fail for lack of causation under the FCA.

Marietta cannot show causation for its claims grounded on the *Qui Tam* filing. The "*[Q]ui [T]am* legal process" did not "go[] forward[]," there were no "years of litigation[]," and Marietta did not "respond[] to the litigative … process[,]" as Marietta alleges[33] (allegations disproven by

---

[32] The government could have insisted dismissal be with prejudice – which it did not – or dismissed the case over Relators' objections under 31 U.S.C. § 3730(c)(2)(A) – which it did not.

[33] Second Am. Compl., *Marietta II*, ¶¶ 5 - 6.

facts appropriate for judicial notice). Rather, the *Qui Tam* was filed under seal and promptly stayed, as required by 31 U.S.C. § 3730(b)(2). No case activity occurred beyond administrative filings to extend the stay under 31 U.S.C. § 3730(b)(3). The *Qui Tam* was dismissed before Marietta was served. No harm can flow from these circumstances.

In truth, Marietta's claims rest on DOJ's FCA investigation, of which it complains at least 60 times in the Second Amended *Marietta II* Complaint. For instance, Marietta asserts that the *Qui Tam* "prompted a comprehensive federal investigation" that lasted "[f]or more than three years," causing it to "endure the cost and burden of being the focus of such an investigation."[34] Tellingly, Marietta also seeks to recover "costs and expenses associated with the investigation."[35]

Even assuming for this Motion that Camden-Clark/WVUHS had some role in the *Qui Tam* (which they did not), as a matter of law, they had no control over the government's investigatory decisions, methods, or resources, or the time the government took to complete its investigation. The FCA investigation belonged to the federal government, outside the control of Relators, Relators' alleged co-conspirator and fellow unnamed relator Kruger, or any entities allegedly supporting them. "Under the FCA, the Government has discretion whether to commence an investigation and issue a CID letter." *Ortiz*, 2019 U.S. Dist. LEXIS 41701, at *17 (citing 31 U.S.C. § 3733(a)(1); *Prosser v. Whittaker*, 2018 U.S. Dist. LEXIS 193062, *4 - 5 (D.D.C. Nov. 13, 2018)); *see also* 31 U.S.C. §§ 3730(a), 3733(a)(1); *Borzilleri*, 24 F.4th at 43 (acknowledging "the government ordinarily retains wide discretion" over FCA "investigatory decisions"). Marietta even admits that the government does not choose to investigate all claims.[36] Moreover, as a

---

[34] *Id.* ¶ 5.

[35] *Id.* ¶¶ 103, 111, 119, 125, 131, 136, 140.

[36] *See id.* ¶ 55 (it investigates "*nearly all*" complaints) (emphasis added).

healthcare provider, Marietta operates in a highly regulated field and is accustomed to routine government oversight, inquiry, and investigation due to its participation in the Medicare and Medicaid programs.

Because a relator has "no authority to control or compel a Government investigation, he cannot be considered the 'direct' cause" of any alleged harm stemming from "the Government's independent investigation" after a *qui tam* complaint is filed. *Ortiz*, 2019 U.S. Dist. LEXIS 41701 at *17. This is equally true for those alleged to have acted as or in conspiracy with relators. Marietta's claims premised on the FCA investigation lack causation, warranting dismissal.[37]

### D. Marietta's Claims Are Untimely.

Even if dismissal were not warranted under *res judicata* and the FCA, Marietta's claims are time-barred under the relevant one- and two-year limitation periods. Sufficient facts to rule in Camden-Clark/WVUHS's favor on statute of limitations grounds appear on the face of the Second Amended Complaint and the filings in the *Qui Tam* and *Marietta I.*

### 1. One-year statutes of limitation bar Marietta's claims for malicious prosecution (Count I) and abuse of process (Count III).

*Malicious Prosecution (Count I).* "An action for malicious prosecution must be brought within one year from the termination of the action alleged to have been maliciously prosecuted." Syl. Pt. 2, in part, *Presier v. MacQueen*, 352 S.E.2d 22 (W. Va. 1985). Public policy "traditionally disfavors" "the tort of malicious prosecution … because of its tendency to impose a chilling effect on the willingness of ordinary citizens … to bring potentially valid civil claims to court."

---

[37] The Court also should reject Marietta's attempt to impose liability on private individuals for the federal government's FCA investigation as clearly contrary to Congress' intent to facilitate the revelation of fraud against the government and encourage private *qui tam* actions. *See, e.g., United States v. Catholic HealthCare W.*, 445 F.3d 1147, 1151 (9th Cir. 2006); *United States v. Bd. of Trustees of the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 538 - 39 (9th Cir. 1998); *Miller*, 505 F. Supp. 2d at 26; *Ortiz*, 2019 U.S. Dist. LEXIS 41701 at *16, n.3.

*McCammon v. Oldaker*, 516 S.E. 38, 46 (W. Va. 1999) (internal quotation marks omitted). Marietta bases its malicious prosecution claim on allegations about the "2013 Report" and the *Qui Tam*.[38] The 2013 Report does not constitute a judicial proceeding upon which this claim may rest. *See Presier*, 352 S.E.2d at 24 - 25. The *Qui Tam* could so qualify, but assuming *arguendo* that its dismissal without prejudice constitutes a favorable termination, it was dismissed on March 23, 2020, and the docket unsealed on April 24, 2020. The statute expired a year after dismissal on March 20, 2021, or at the latest on Monday, April 26, 2021 (with the precise deadline occurring on a weekend), well before Marietta filed this claim against Camden-Clark/WVUHS.

**Abuse of Process (Count III).** "An action for abuse of process must be brought within one year from the time the right to bring the action accrued." *Presier*, 352 S.E.2d at Syl. Pt. 3; *see also Ballock v. Costlow*, 430 F. Supp. 3d 146, 160 (N.D. W. Va. 2019). The statute commences "from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Presier*, 352 S.E. 2d at 29. Marietta bases its abuse of process claim on the *Qui Tam* filing (November 22, 2016) and the United States' FCA investigation (which ended at least by March 20, 2020, when the government consented to the *Qui Tam* dismissal).[39] As with the malicious prosecution claim, this statute expired by March 20, 2021, or at the latest by April 26, 2021.

> **2.    Two-year statutes of limitation bar Marietta's claims for tortious interference (Count II), fraudulent legal process (Count IV), and negligent supervision (Count VI).**

**Tortious Interference with Business Relationships and Expectancies (Count II).** "[T]he two-year statute of limitations governing actions for damage to property, set forth under W. Va.

---

[38] Second Am. Compl., *Marietta II*,  ¶¶ 98–101.

[39] *Id*. ¶¶ 116–18 & Ex. A.

Code [§] 55-2-12, applies to an action for tortious interference with business relationship[s]." Syl. Pt. 6, *Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n*, 438 S.E. 2d 6 (W. Va. 1993); *accord Sandhir v. Little*, No. 1:17-CV-102, 2019 U.S. Dist. LEXIS 43949, *34 - 37 (N.D. W. Va. Jan. 23, 2019). Marietta asserts that the *Qui Tam* and DOJ investigation led physicians to terminate their business relationships with Marietta and cease engaging with its recruiting efforts [40] The complained of conduct occurred in 2016, with the filing of the *Qui Tam* and the initiation of the government's FCA investigation.[41] *See Moore v. Minardi*, No. 22-0187, 2023 W. Va. LEXIS 99, *5 - 9 (W. Va. Apr. 5, 2023) (holding that the allegedly tortious interference conduct complained of triggered accrual of the two-year statute of limitation). Even if the Court instead looks to Marietta's alleged injuries, which allegedly occurred from 2017–2019;[42] the *Qui Tam* dismissal on March 23, 2020; or the unsealing of the docket on April 24, 2020; the statute expired *no later than Monday, April 25, 2022,* before Marietta filed its claim against Camden-Clark/WVUHS.

*Fraudulent Legal Process (Count IV).* Marietta asserts a claim for fraudulent legal process in violation of W. Va. Code § 61-5-27a. The statute does not contain a temporal limitation, but the relevant injuries include infringements of property rights, namely, the "loss of benefits of existing and prospective business relationships, reputational harm, [and] lost business."[43] *See Garrison*, 438 S.E. 2d at Syl. Pt. 6. Thus, the two-year statute of limitations for damage to property, W. Va. Code § 55-2-12, should apply. As explained, these claims are untimely under that two-year statute.

*Negligent Supervision (Count VI).* Marietta's claim of negligent supervision is governed by the same two-year statute of limitations in W. Va. Code § 55-2-12 as its tortious interference

---

[40] *Id*. ¶ 88.

[41] *See id*. ¶ 88; *id.* Ex. A.

[42] *Id*. ¶¶ 71 - 72.

[43] *Id*. ¶ 125.

claim. *Dunn v. Rockwell*, 225 W. Va. 43, 62, 689 S.E.2d 255, 274 (2009) (citing *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W.Va. 578, 583, 567 S.E.2d 294, 299 (2002)).[44] As explained *supra*, this claim is untimely under the two-year statute.

### 3. The claims for conspiracy (Count V), aiding and abetting (Count VII), and vicarious liability (Count VIII) are also untimely.

***Conspiracy (Count V).*** The time for bringing a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim for conspiracy is based." Syl. Pt. 10, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Marietta bases its conspiracy claim (Count V) on its other asserted torts: malicious prosecution, tortious interference, abuse of process, and fraudulent legal process, and negligent supervision.[45] Those claims are time-barred, and so is the conspiracy claim. *See Spence v. Swartz*, No. 3:22-cv-135, 2022 U.S. Dist. LEXIS 194927, *13, n.5 (N.D. W. Va. Sept. 28, 2022).

***Aiding & Abetting (Count VII).*** The ability to recover for aiding and abetting "necessarily depends upon the ability of a plaintiff to prove the underlying tort." *Roney v. Gencorp*, 431 F. Supp. 2d 622, 638 (S.D. W. Va. 2006). It follows that if the underlying torts are time-barred, then so is Marietta's aiding and abetting claim. *Cf. Sandhir*, 2019 U.S. Dist. LEXIS 43949, at *37 - 39 (where plaintiff failed to satisfy the pleading requirements for the underlying torts, its aiding and abetting and conspiracy claims also failed). Further, the Southern District has applied the two-year statute of limitations under W. Va. Code § 55-2-12(b) to aiding and abetting a tort. *W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 810 (S.D. W. Va. 2013). That two-year statute expired before the claim was filed for the reasons stated.

---

[44] *See id.* ¶¶ 133 - 37.

[45] *Id*. ¶ 130 (referencing "the unlawful torts alleged herein").

***Vicarious Liability (Count VIII).*** Marietta alleges Camden-Clark/WVUHS are vicariously liable for Kruger as his employer.[46] "Because the employer may only be held liable to the extent that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment, the applicable statute of limitations is determined by the tortious act of the employee." *Dunn*, 689 S.E.2d at Syl. Pt. 12 & 273 - 75; *see also Monongahela Power Co. v. Buzminsky*, 850 S.E. 2d 685, 693 (W. Va. 2020). Although Camden-Clark/WVUHS dispute that Kruger acted within the scope of his employment, for this Motion, it matters only that the claims premised on his alleged wrongdoing are time-barred.

### 4.    Neither the discovery rule nor tolling applies.

Marietta may seek to modify application of the statutes of limitation through the discovery rule or tolling. On the face of the Second Amended Complaint, the *Qui Tam* docket, and the *Marietta I* papers, neither the discovery rule nor tolling doctrine apply. As an initial matter, no court governed by West Virginia law has applied the discovery rule or tolling to modify the rule that malicious prosecution claims must be brought within one year of the termination of the complained of action. Such exceptions would contravene *McCammon*'s "stringent" rule. 516 S.E.2d at 45.

Even if the discovery rule applies, although Marietta does not identify when or how it purportedly learned of Camden-Clark/WVUHS's alleged involvement,[47] the rule asks when plaintiff knew *or reasonably should have known* it had been injured, the identity of the entity responsible, and of the casual relationship to the injury. *See Dunn*, at Syl. Pt. 3. The undisputed

---

[46] Second Am. Compl., *Marietta II*, ¶¶ 149 - 50.

[47] *Id.* ¶¶ 8, 78, 81.

facts make it clear Marietta reasonably should have known of Camden-Clark/WVUHS's relationship to Relators at the time it filed *Marietta I*.

The *Qui Tam* docket was unsealed on April 24, 2020. Since Marietta asserts that the *Qui Tam* and DOJ's investigation were well known in the Valley's medical community, Marietta presumably learned of those events far in advance of the unsealing. However, by at least April 24, 2020, Marietta obtained the key piece of the puzzle that permitted it to file suit: Relators' identities. By September 20, 2020, when it filed *Marietta I*, Marietta had or reasonably should have had knowledge of its alleged injuries, the alleged causal relationship connecting Relators to its injuries, and of Camden-Clark/WVUHS's relationship with at least one Relator (King, who Marietta at the time acknowledged was "a former officer of Camden Clark Medical Center").[48] Marietta referenced Camden-Clark 20 times in the initial *Marietta I* complaint, so any assertion that it did not know or have the means to discover whether and how Camden-Clark (and WVUHS, its affiliate) was involved would strain credulity. Marietta cannot plausibly contend that it could not discover with exercise of reasonable diligence that Camden-Clark/WVUHS were allegedly involved, especially once armed with the powerful tool of federal civil discovery (which it even used to subpoena documents from Camden-Clark in *Marietta I*).[49]

Marietta, stating "the System's and WVU Hospital's support and sanctioning remained intentionally concealed for more than a year . . ."[50] implies that through alleged (but unexplained) concealment by unidentified actors, it was not aware of Camden-Clark's involvement in the *Qui Tam* and federal investigation when it filed *Marietta I*. As established in Section III(C), this

---

[48] Ex. F, Compl., *Marietta I*, ¶ 10.

[49] Ex. P, Notice of Intent to Serve Subpoena, *Marietta I*, ECF No. 156; Ex. Q, Subpoena Returned Executed, *Marietta I*, ECF No. 161.

[50] Second Am. Compl., ¶¶ 78, 81.

argument must fail because Marietta's bare-bones allegation of fraud and concealment do not satisfy the robust Rule 9(b) pleading standard. Marietta has had three chances to plead the necessary facts showing fraud and concealment and has not made any attempt to do so.

Simply put, this case is time-barred.

### D.     Marietta Fails to State Valid Claims for Relief.

For the reasons advanced by the *Marietta I* defendants, Marietta cannot state a claim for malicious prosecution (Count I), tortious interference (Count II), abuse of process (Count III), fraudulent legal process (Count IV), or civil conspiracy (Count V).[51] In addition to arguments aired previously, Marietta does not (and cannot) allege Camden-Clark/WVUHS filed the *Qui Tam*, or that Camden-Clark/WVUHS were co-clients of Relators' counsel. It also follows that the dependent claims of conspiracy (Count V), aiding and abetting tortious conduct (Count VII), and vicarious liability (Count VIII) cannot survive Marietta's failure to state valid claims for the underlying torts, and should be dismissed.

Marietta also does not state a claim for negligent supervision. In Count VI, Marietta alleges that Camden-Clark/WVUHS "failed to properly supervise, if not entirely failed to supervise, Kruger and others in the pursuit and assistance in the pursuit of the *qui tam* action," citing a definition from the Restatement (Second) of Torts prescribing liability when an "employer

---

[51] Generally, Camden-Clark/WVUHS advance all arguments for dismissal asserted by the *Marietta I* defendants. *See, e.g.,* Ex. X, Defs.' Mem. Supp. Joint Mot. Dismiss, *Marietta I* (S.D. W. Va.  Dec. 22, 2020), ECF No. 13; Ex. U, Defs.' Joint Reply Pls.' Resp. Mot. Dismiss, *Marietta I*, ECF No. 37; Ex. V , Defs.' Mem. Supp. Joint Mot. Reconsideration, *Marietta I*, ECF No. 48; Ex. Y, Kruger's Mem. Supp. Mot. Dismiss, *Marietta* I (N.D. W.Va. April 22, 2022), ECF No. 141; Ex. W, Defs.' Reply Supp. Joint Mot. Reconsideration, *Marietta I*, ECF No. 50; Ex. Z, Kruger's Reply Supp. Mot. Dismiss, *Marietta I* (N.D. W. Va. May 13, 2022), ECF No. 158; Ex. A, Mem. Supp. Defs. Mot. Summ. J., *Marietta I*; Ex. AA, Defs.' Joint Reply Pls.' Resp. Supp. Joint Mot. Summ J., *Marietta I* (N.D. W. Va. Feb. 15, 2023), ECF No. 420. To the extent other arguments were raised in filings made under seal (*e.g.*, Dkts. 118, 126), they are also incorporated. Camden-Clark/WVUHS respectfully submit that the Court's rejection of these arguments was misguided.

authorizes an employee to act within or without the scope of employment, fails to properly supervise the employee, and the employee causes injury to another."[52] West Virginia courts have expanded on the Restatement, holding that negligent supervision requires proof that "the employer failed to supervise its employee, and as a result, the employee **committed a negligent act** and caused injury." *C.C. v. Harrison Cnty. Bd. of Educ.*, 245 W. Va. 594, 605, 606, 859 S.E.2d 762, 773 - 74 (2021) (emphasis added); *Taylor v. Cabell Huntington Hosp.*, Inc., 208 W. Va. 128, 134, 538 S.E.2d 719, 725 (2000) ("While the appellant may be able to show that the hospital breached its duty to supervise [its employee], absent a showing of negligence by [the employee], the appellant is unable to show that the hospital's negligence proximately caused her injury."); *accord Launi v. Hampshire Cty. Prosecuting Attorney's Off.*, 480 F. Supp. 3d 724, 733 (N.D. W. Va. 2020).

At no point does Marietta posit that Kruger and the unidentified "others" acted *negligently* by pursuing the *Qui Tam*; all the conduct that Marietta insists Camden-Clark/WVUHS authorized was *intentional*, not negligent.[53] Because a negligent supervision claim "may not be based upon an underlying intentional act," the Court should dismiss Count VI. *See C.C.*, 245 W. Va. at 606, 607 ("[B]ecause all of the acts alleged to have been committed by the [Defendant] were comprised of intentional conduct, the circuit court correctly ruled that the Petitioners had not made the requisite predicate showing of the [Defendant's] negligence to support a claim of negligent supervision...."); *see also Selders v. MegaCorp Logistics, LLC*, Civil Action No. 2:14-CV-60, 2014 U.S. Dist. LEXIS 192474, *3 (N.D.W. Va. Dec. 22, 2014) ("Because the alleged acts in the

---

[52] Second Am. Compl., *Marietta II*, ¶ 133.

[53] Second Am. Compl., *Marietta II*, ¶¶ 8, 11-12, 78, 81, 88, 91 & 109.

Amended Complaint were intentional, the plaintiff has not alleged negligence as required to sustain a cause of action for negligent supervision.") (internal citations omitted).

## IV.   Conclusion.

Marietta had its chance to assert tort claims arising from the *Qui Tam*, and that chance has passed. It brought these very same causes of action against Relators and Kruger and aired those claims fully through discovery, motion practice, and trial. Marietta failed to bring Camden-Clark/WVUHS into the prior action despite its knowledge of those defendants' connections to Camden-Clark and WVUHS as its affiliate, subpoenaing documents from Camden-Clark, examining current and former Camden-Clark employees and board members at deposition, and examining former Camden-Clark employees at trial. While *Marietta I* was pending, Marietta filed this case in violation of the doctrine against claims splitting. Now that a final judgment has issued in *Marietta I*, *res judicata* plainly bars this subsequent suit. The Court should dismiss this case with prejudice to avoid further waste of judicial resources and offense of equity.

Alternatively, the Court should dismiss this case with prejudice on preemption, public policy, causation, statute of limitation grounds, and for failure to state a claim.

Dated: August 21, 2023

CAMDEN-CLARK MEMORIAL HOSPITAL
CORPORATION, and
CAMDEN-CLARK HEALTH SERVICES, INC.,

BY COUNSEL:


/s/ *Susan W. Romaine*
Susan W. Romaine (WVSB #9936)
Andrew B. Cooke (WVSB #36564)
Sherrie Armstrong Davis (WVSB #11525)
Tessa L. Adkins (WVSB #13941)
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380 (25301)
P.O. Box 3824
Charleston, WV  25338-3824
Telephone:  304.414.1800
Email:  swromaine@tcspllc.com
       acooke@tcspllc.com
       sarmstrongdavis@tcspllc.com
       tadkins@tcspllc.com
Christine S. Vaglienti (WVSB#4987)
Assistant Vice President and Senior Litigation
Counsel
West Virginia University Health System Legal
Services
1238 Sunset Towne Centre
Morgantown, WV 26505
Telephone: 304.598.4199
Email: vaglientic@wvumedicine.org

26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARIETTA AREA HEALTHCARE, INC., et al.,

     Plaintiffs,

v.                                Civil Action No. 5:23-cv-131
                                       Judge Bailey

CAMDEN-CLARK MEMORIAL HOSPITAL
CORPORATION, et al.,

     Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of same to counsel of record.

/s/ *Susan W. Romaine*
Susan W. Romaine (WVSB #9936)
Andrew B. Cooke (WVSB #36564)
Sherrie Armstrong Davis (WVSB #11525)
Tessa L. Adkins (WVSB #13941)
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380 (25301)
P.O. Box 3824
Charleston, WV  25338-3824
Telephone:  304.414.1800
Email:  swromaine@tcspllc.com
       acooke@tcspllc.com
       sarmstrongdavis@tcspllc.com
       tadkins@tcspllc.com

Christine S. Vaglienti (WVSB#4987)
Assistant Vice President and Senior Litigation Counsel

27

West Virginia University Health System Legal
Services
1238 Sunset Towne Centre
Morgantown, WV 26505
Telephone: 304.598.4199
Email: vaglientic@wvumedicine.org