IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARIETTA AREA HEALTHCARE, INC., et al.,

    Plaintiffs,

v.                                                    Civil Action No. 5:23-cv-131
                                                         Judge Bailey

CAMDEN-CLARK MEMORIAL HOSPITAL
CORPIRATION, et al.,

    Defendants.

## REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Defendants Camden-Clark Memorial Hospital Corp.; Camden-Clark Health Services, Inc.; West Virginia United Health System, Inc, d/b/a West Virginia University Health System; and West Virginia University Hospitals, Inc. ( "Camden-Clark/WVUHS")[1], reply to Plaintiffs Marietta Area Healthcare, Marietta Memorial Hospital, and Marietta Healthcare Physicians, Inc.'s ("Marietta's") Response to Defendants' Motion to Dismiss ("Response" or "Resp."), filed with their Motion to Seal, which this Court granted on September 5, 2023 (ECF. 43). Marietta has failed

---

[1] In its responses, Marietta has changed its short-form references to the *Marietta II* defendants to make them seem more connected to the Northern District —and to each other— than they are in reality. In the Second Amended Complaint, Marietta referred to the defendants as "Camden," "Defendant System," and "Defendant WVU Hospital," respectively. *See* Second Amended Complaint, (ECF No. 28) ("Sec. Am. Compl."). Even those phrases seemed designed to emphasize the two WVUHS and WVUH defendants rather than the two Camden-Clark defendants, but now, Marietta has gone further down that path by inaccurately lumping the defendants together and calling them all "WVU Medicine." *See, e.g.*, Plfs. Resp. Marietta apparently attempts to use this change of phrase to spotlight WVUHS and WVUH while shadowing Camden-Clark, which, as this Court is well aware, is Marietta's major competitor in the Mid_Ohio Valley. The new moniker does not reflect reality and is inconsistent with the Second Amended Complaint's prominent focus on Camden-Clark. *See* Defs.' Mem. Supp. Mot. Transfer, *Marietta II*, 5:23-cv-00131 (N.D. W. Va.) (Aug. 21, 2023) (ECF No. 35), at 6 (explaining Marietta's emphasis on Camden-Clark). Marietta seeks to deepen this impression elsewhere by highlighting "WVU Medicine's *flagship institution* (West Virginia University Hospitals) and *base of operations* (West Virginia United Health Systems)," Plfs.' Resp. to Mot. Transfer. at 6 (emphasis added), improperly conflating entities and with no mention of Camden-Clark's base of operations because they do not advance its venue story. Moreover, Marietta is either unaware of, or wishes to ignore, the distinctions among the corporate entities it has named as defendants, including entities which have specific statutory duties (WVUH and WVUHS) and entities which do not have the same statutory duties (CCMC and CCHS). *See* W.Va. Code §18-11C-1 et seq.; *Queen v. WVUH,* 179 W.Va. 95, 365 S.E.2d 375 (1987); *Wiles v. WVUH,* 2020 WL 4384235 (2020) (Memorandum Decision).

to advance any substantive argument that saves its complaint, twice-amended, from dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### I. Federal Rule of Civil Procedure 12(b)(6) Provides the Correct Standard of Review and Supports Dismissal.

Despite Marietta's efforts to transform this motion into one for summary judgment, the Court should evaluate Defendants' Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) based on the pleadings, those documents referenced in the pleadings, and other matters of which it may properly take judicial notice. Marietta's assertions that Motion is due to be dismissed pursuant to Fed. R. Civ. P. 56(a),[2] is unwarranted, given that Camden-Clark/WVUHS has not suggested the Court address any materials outside of those allowed by Fed. R. Civ. P. 12(b)(6) and legal jurisprudence regarding the same.[3]

Marietta also argues the Motion should be denied because Camden-Clark/WVUHS "[failed] to provide the court with a full illustration of the facts pled in the first [sic] amended complaint, . . . or the facts within [Camden-Clark/WVUHS's] knowledge that directly contradict" its narrative.[4] It further argues "a plaintiff is required only to adequately plead an affirmative case for relief, while it is a defendant's job to develop the facts supporting an affirmative defense through discovery."[5] Unsurprisingly, Marietta provides no legal precedent to support any of these positions given they are complete misstatements of the law. As the Supreme Court stated in one of its landmark decisions concerning pleading standards, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim; courts "are [no longer] bound to accept as true a legal conclusion couched as a factual allegation."

---

[2] Plfs'. Resp. at 10–11.
[3] *See* Defendants' Motion to Dismiss (ECF No. 32) ("Defs.' Mot. Dismiss"); Defendants' Memorandum in Support of Motion to Dismiss (ECF No. 33) ("Defs.' Mem. Supp. Mot. Dismiss").
[4] Plfs.' Resp. at 8.
[5] Plfs.' Resp. at 10–11.

*Ashcroft v. Iqbal*, 556 U.S. 662, 675-677 (2009). *See also Walker v. Prince George's Cnty. Md.*, 575 F. 3d 426, 431 (4th Cir. 2009). Marietta is charged with the duty of asserting facts to support viable causes of action and cannot shift that burden to Camden-Clark/WVUHS.

Marietta also asserts that discovery is necessary before an affirmative defense like *res judicata* or statute of limitations can support dismissal of a complaint,[6] when just the opposite is true. Numerous courts have expressly rejected this position. *See Halscott Megaro, P.A. v. McCollum*, 66 F. 4th 151, 157-58 (4th Cir. 2023) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F. 3d 435, 448 (4th Cir. 2011) and *Phillips v. Pitt County Mem. Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009) (holding that (1) "a court may properly take judicial notice of matters of public records without converting a motion to dismiss into a motion for summary judgment" when determining whether an affirmative defense requires the dismissal of the complaint; and (2) a review of those materials showed that the affirmative defenses of collateral estoppel and unclean hands required dismissal); *Zappin v. Ramey*, Case No.:3:22-cv-00080, 2022 U.S. Dist. LEXIS 237294, *49 (S.D. W.Va. Oct. 27, 2022) (finding the court may "take judicial notice of the prior court findings and opinions arising from that litigation in order to resolve the motions to dismiss, including the affirmative defenses of claim and issue preclusion."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2nd Cir. 2014) ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."); *Kowalsky v. Deutsche Bank Nat'l Trust Co.*, Civil Action No.: 14-07856, 2015 U.S. Dist. LEXIS 133284, *14 (D. N.J. Sept. 30, 2015) (holding that dismissal of claims, including fraud, was proper based on statute of limitations defense when "the dates in the Complaint and matters of public

---

[6] Plfs.' Resp. at 9–11.

records" showed the claims were facially barred and where review of the same materials affirmatively showed the plaintiff could not invoke the discovery rule by claiming "recent discovery" concerning "issues he essentially already litigated in three separate proceedings."); *Bryant v. Comm'r of Soc. Sec.*, 14 Civ. 5764, 2015 U.S. Dist. LEXIS 151143,* 34-40 (S.D. N.Y. Aug. 17, 2015) (same).

## II. As Established in Camden-Clark/WVUHS's Motion, *Res Judicata* Bars This Suit.

### A. *Marietta I* ended with a legally sufficient final adjudication for *res judicata* purposes.

Voluntary settlements leading to dismissal with prejudice are considered final judgments on the merits for purposes of *res judicata*.[7] *See Mills v. E. Gulf Coal Preparation Co., LLC*, Civil Action No. 5:08-0260, 2011 U.S. Dist. LEXIS 25764, *10-11 (S.D. W. Va. Feb. 22, 2011) (dismissals with prejudice such as settlement agreements and consent agreements "are treated as final judgments on the merits for purposes of *res judicata*.") (internal citations omitted); *In re Settlement of Estate of McIntosh*, 144 W. Va. 583, 584, 109 S.E. 2d 153, 154 (W. Va. 1959) ("A judgment recording a compromise settlement and dismissing the action 'settled and agreed' is sufficient on which to found a *res judicata* plea."); *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1326 (11th Cir. 2020); *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986). Marietta does not disagree.

Instead, Marietta argues that Camden-Clark/WVUHS agreed to reserve Marietta's right to bring this case against them in the *Marietta I* settlement agreement, so the agreement and dismissal here do not operate as a final judgment.[8] Marietta, however, has provided no facts or legal authority

---

[7] Defs.' Mem. Supp. Mot. Dismiss at 7-8.
[8] Plfs.' Resp. at 12–13.

4

to support this legal conclusion.[9] Camden-Clark/WVUHS did not sign any agreement preserving claims against them. Marietta's counternarrative through various exhibits should not detract from the proper 12(b)(6) focus. Further, this Court can (and should) take judicial notice that Marietta did not sue Camden-Clark/WVUHS in *Marietta I,* had every opportunity to do so, but strategically decided to split claims, though wholly inconsistent with West Virginia law, and not without consequences solely the responsibility of Marietta.[10]

In addition, Marietta misleads the Court about the strictness of the standard to prove implied or express consent when citing *Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 504 S.E.2d 854 (Va. 1998) and *Bockweg v. Anderson*, 333 N.C. 486, 428 S.E.2d 157 (N.C. 1992),[11] which are also non-binding. In *Bill Greever Corp.*, while the court did state a party could waive *res judicata*, it held that "a defendant may waive the claim-splitting rule by failing to object reservation language if the reservation clause clearly expresses the parties' intent to preserve specific claims" or the "facts and circumstances clearly show that the parties intended to preserve specific claims for later adjudication." 504 S.E.2d at 858. In *Bockweg*, the court found that the affirmative defense of *res judicata* was not available because the "facts of the case demonstrate[d]

---

[9] The case it relies upon, *Valloric v. Dravo Corp.*, 178 W. Va. 14, 357 S.E. 2d 207, 211 (W. Va. 1987), does not address *res judicata* in reference to settlement agreements; instead, the court sought to determine whether indemnitees "had to prove in their indemnity claim against [their indemnitor] that they were actually liable to the [injured party] or whether it was sufficient to show that at the time [they settled with the injured party], they had a reasonable belief they were potentially liable to the [injured party]."

[10] Equitable doctrines bar this gamesmanship because "generally … a single or entire cause of action may not be divided or split so as to make it the subject of several actions, without the express or implied consent of the person against whom the cause of action exists." *Estate of Jones v. City of Martinsburg*, Nos. 18-0927, 18-1045, 2020 W. Va. LEXIS 709, *21 - 22 (W. Va. Oct. 30, 2020) (applying the claim-splitting doctrine and citing authorities explaining that the rule "promotes fairness to the parties" and "is in harmony with public policy and the tendency toward simplicity and directness in the determination of controversial rights and the elimination of multiplicity of suits") (internal quotation marks omitted); *see also Howell v. Luckey,* 518 S.E.2d 873, 877 (W. Va. 1999) ("The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice – to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts.").

[11] Plfs.' Resp. at 12.

that the parties intended to treat the two allegations of negligence separately" — the "defendants signed the stipulated dismissal indicating their consent to separate the action . . . [and] had the option of withholding their consent to the partial voluntary dismissal without prejudice, thus forcing plaintiffs to decide whether to go forward on the claim or to seek a court-ordered dismissal." 428 S.E. 2d at 163. Here, Camden-Clark/WVUHS did not agree to preserve or split any claim and or sign any express agreement. Marietta does not cite a single viable source to establish clear preservation of specific claims for adjudication in a later action under similar circumstances.

### B. Marietta's allegations in this case establish privity and Marietta fails to offer any legal authority otherwise.

Marietta fails to show that any court has held that *alleged* co-conspirators are not in privity for *res judicata* purposes. In fact, with the exception of *Suntrust Bank v. Stoner*, No. 3: 07-cv-397, 2009 U.S. Dist. LEXIS 32493, * 2 (E.D. Tenn. April 14, 2009),[12] which was decided by a federal court interpreting Tennessee law, every court to have addressed the issue has found that alleged co-conspirators are in privity with one another for *res judicata*, including the Court of Appeals of Tennessee, which stated in *Anderson v. Rayner*, No. W2004-00485, 2005 Tenn. App. LEXIS 827, *15–16 (Tenn. Ct. App., Jackson Dec. 28, 2005), that "[a]lleged co-conspirators are 'in privity' with one another for res judicata purposes." (internal citations omitted). In addition to the cases the Defendants have already cited,[13] the following courts reached the same holdings: *Busse v. Steele*, Case No. 2:10-cv-89, 2010 U.S. Dist. 104779, *5-6 (M.D. Fla. Aug. 18, 2010); *Dodd v. Corporate Does Nos. 1-100*, Case No. 8:10-cv-1092, 2010 U.S. Dist. LEXIS 71927, * 3–4 (M.D.

---

[12] Plfs.' Resp. at 15.
[13] Defs.' Mem. Supp. Mot. Dismiss at 8-9 (citing cases).

Fla. Jun. 28, 2010); *Goel v. Heller*, 667 F. Supp. 144, 152 (D. N.J. 1987); *McLaughlin v. Bradlee*, 599 F. Supp. 839, 847-48 (D. D.C. 1984).

    C. **The causes of action as pled by Marietta in both *Marietta I* and *Marietta II* are sufficiently similar, and Marietta has failed to sufficiently plead concealment.**

Marietta contends that the claims in *Marietta I* and *II* differ and thus preclude *res judicata*.[14] Despite the addition of newly-labeled claims, the causes of action are identical for *res judicata* because *Marietta I* and *Marietta II* arise out of the same alleged core transactions and facts (the *Qui Tam*, the United States's FCA investigation, and the actions of Kruger and Relators).[15] Moreover, *res judicata* extends to all claims which could have been litigated in the prior action.[16] Minor differences among elements of claims are irrelevant in the face of the "common nucleus of operative facts." *Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 15 (1st Cir. 2010). Marietta offers nothing to refute this legal certainty. Indeed, the Fourth Circuit has rejected such artful pleading designed to frustrate the goals of *res judicata*. *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004).

Moreover, Marietta's attempt to save their action by alleging Camden-Clark/WVUHS somehow "concealed [their] activities"[17] (despite not being named defendants in prior litigation) fails as a matter of law. This conclusory and vague allegation lacks the requisite particularity to avoid dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b) (despite Marietta having multiple chances to amend).[18] Likewise, blindly asserting Camden-Clark/WVUHS "expressly *preserved* Marietta's right to pursue *Marietta II*," does not save the case as established *supra* in Section II(A).

    D. **As a matter of law, principles of equity cannot be used to prevent the application of *res judicata* here; those principles actually *support* dismissal due to *res judicata*.**

---

[14] Plfs.' Resp. at 15–16.
[15] *See* Defs.' Mem. Supp. Mot. Dismiss at 10 (citing cases).
[16] *See* Defs.' Mem. Supp. Mot. Dismiss at 6–7, 10.
[17] Plfs.' Resp. at 16.
[18] *See* Defs.' Mem. Supp. Mot. Dismiss at 10.

"The Supreme Court has made it clear . . . that there is 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1981)). In reaching this determination, the Court "explained that 'the doctrine of *res judicata* serves vital public interests beyond any individual judge's *ad hoc* determination of the equities in a particular case' and rejected *any equitable exceptions* to the application of *res judicata* based on 'public policy' or 'simple justice.'" *Id. See also Shoup v. Bell & Howell Co.*, 872 F. 2d 1178, 1182 (4th Cir. 1989) ("The doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts.") (citing *Federated Department Stores*, 452 U.S. at 402) (internal quotation marks omitted); *Wells v. Powers*, Case No. 2:16-cv-1060, 2016 U.S. Dist. LEXIS 142557, *10–11 (D. S.C. Sept. 12, 2016) (same); *Cabot Oil & Gas Corp. v. Beaver Coal Co.*, No. 16-0904, 905, 2017 U.S. Dist. LEXIS 906, * 19–21 (W. Va. Nov. 9, 2017). Since Camden-Clark/WVUHS have established each element of *res judicata*, Marietta's appeals based on vague invocations of equity and justice[19] should fall on deaf ears.

Even if another equitable doctrine could circumvent *res judicata* (which it cannot), Marietta's invocation of judicial estoppel [20] is not an available defense. Once again, Marietta has misrepresented to the Court the circumstances under which judicial estoppel may be asserted.

> "Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court" and the Fourth Circuit has affirmatively stated that "three elements must be satisfied before judicial estoppel will be applied . . .": (1) "the party sought to be

---

[19] Plfs.' Resp. at 16–18.
[20] Plfs.' Resp. at 16–18.

> estopped must be seeking a position that is inconsistent with a stance taken in prior litigation"; (2) "the prior inconsistent position must have been accepted by the court"; and (3) "the party sought to be estopped must have intentionally mislead the court to gain an unfair advantage."

*Nabors v. Tincher*, Civil Action No. 5:22-cv-00059, 2022 U.S. Dist. LEXIS 227746, *7-9 (S.D. W. Va. Dec. 19, 2022) (citing *Zinkland v. Brown*, 478 F. 3d 634, 638 (4th Cir. 2007); *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F. 3d 26, 29 (4th Cir. 1995); *Lowery v. Stovall*, 92 F. 3d 219, 224 (4th Cir. 1996); internal quotations omitted). *See also* Syl. 3, *Bison Interests, LLC v. Antero Res. Corp.,* 244 W. Va. 391, 393, 854 S.E. 2d 211, 213 (W. Va. 2020); Syl. 4, *State ex rel. Universal Underwriters Ins. Co. v. Wilson,* 241 W. Va. 335, 337, 825 S.E. 2d 95, 98 (W.Va. 2019). Camden-Clark/WVUHS were not sued in *Marietta I* and have taken no prior litigation positions. This renders judicial estoppel wholly irrelevant. Further, Camden-Clark/WVUHS have made clear that *res judicata* is founded on Marietta's own allegations, as is proper at the motion to dismiss stage. Marietta anticipates that if this case proceeds (which it should not), Camden-Clark/WVUHS will deny all untrue allegations. However, Marietta also knows that at this point in the case, such denials are irrelevant.

Additionally, the Fourth Circuit has "dictated that the doctrine 'must be applied with caution' and only 'in the narrowest of circumstances, " *Nabors,* 2022 U.S. Dist. LEXIS 227746, at * 9 (citing *Gilliam v. Sealy,* 932 F. 3d 216, 233 (4th Cir. 2019), and is limited to "instances in which the inconsistent positions are taken within the same action." *Catjen, LLC v. Hunter Mill West, L.C.,* No. 19-1790, 2021 U.S. App. LEXIS 20277, *6–7 (4th Cir. Jul. 8, 2021). Marietta has offered no facts to support its position that judicial estoppel should be invoked here because none exist. This is merely another illegitimate attempt by Marietta to try to save this improper action.

9

Finally, "*[r]es judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding," and it "encourage[s] reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (superseded by statute on other grounds). *See also Conley v. Spillers*, 301 S.E.2d 216, 219-20 (W. Va. 1983) (same); *Richardson v. Church of God Int'l*, Civil Action No. 1:13-21821, 2014 U.S. Dist. LEXIS 116973, *5–7 (S.D. W. Va. Aug. 22, 2014) (same); *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971) ("Permitting repeated litigation of the same issues as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the party of the lower courts.") (internal quotations omitted). "Those interests are especially implicated in a case . . . where the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Airframe,* 601 F.3d at 12. *See also Elbert v. Carter*, 903 F.3d 779, 783-84 (8th Cir. 2018); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287-89 (5th Cir. 1989); *George v. United Ky. Bk.*, 753 F. 2d 50, 52 (6th Cir. 1985). Allowing Marietta to move forward with these claims would create duplicative piecemeal litigation, after Marietta made the strategic decision to not join Camden-Clark/WVUHS in *Marietta I*. It would violate the very principles the *res judicata* doctrine seeks to protect - protection of judicial decisions, prevention of vexatious litigation, and preserving judicial economy.[21] Marietta should suffer the consequences of its litigation gamesmanship- the dismissal of its claims with prejudice under *res judicata.*

### III. Marietta's Claims Are Barred By Public Policy.

Marietta's attempts to avoid dismissal of its claims based on established public policy

---

[21] *See supra* and Defs.' Mem. Supp. Mot. Dismiss at 6–7 & n. 21.

grounds under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, are misleading and unpersuasive. Marietta falsely equates preemption with public policy.[22] Camden-Clark/WVUHS assert three independent grounds for dismissal under the FCA: preemption, public policy, and causation.[23] Rather than address each on their merits, Marietta urges the Court to reject them wholesale because "they are the same preemption arguments the Court has repeatedly rejected."[24] Marietta is right that FCA preemption was raised in *Marietta I*, and WVUHS/Camden-Clark have asked this Court to reconsider its ruling on that issue.[25] But Marietta is otherwise wrong; a reading of the pleading Marietta cites to assert that the Court has already considered and rejected the FCA public policy bar to its claims shows this characterization is patently false.[26]

Marietta also misconstrues *United States ex rel. Miller v. Harbert*, 505 F. Supp. 2d 20 (D.D.C. 2007).[27] *Miller* does not address or even mention preemption; instead, *Miller* focuses on the state law claims a party is allowed to assert while preserving the "unavailability of contribution and indemnification for a defendant under the False Claims Act . . ." *Id.* at 26. The Court characterized the bar, based on public policy, as the following "sensible rule":

> If a defendant's counterclaim is predicated on its own liability, then its claims against a relator typically will allege that the relator participated in the fraud, or cause the defendant some damage by the act of being a relator, that is, by disclosing the defendant's fraud. The first kind of action seeks contribution or indemnity, rights that are not provided by the FCA because they would deter relators, allow wrongdoers to shift their costs, and would disrupt the intended framework of incentives and punishments established by the FCA. The second kind of action has the same effect of providing contribution or indemnity, with the perverse twist that the relator is not even accused of contributing to the defendant's fraud. If such suit were allowed, they would punish *innocent* relators, which

---

[22] Plfs.' Resp. at 19.
[23] Defs.' Mem. Supp. Mot. Dismiss at 12–17.
[24] Plfs.' Resp. at 19.
[25] Defs.' Mem. Supp. Mot. Dismiss at 12–13.
[26] *See* Mem. Supp. Dfts' Jt. Mot. Dismiss, *Marietta I* (Mar. 25, 2021), ECF No. 31, 13-15.
[27] Plfs.' Resp. at 19.

> would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud. The FCA contains several provisions seeking to protect relators from retaliation, and it would run counter to this policy if the Court were to allow retaliatory suits against truthful relators.

*Id.* at 28-29 (emphasis in original). That powerful reasoning justifies application of the public policy bar here, but Marietta effectively ignores it, along with similar holdings from the Ninth Circuit and District of Nevada.[28]

Marietta is rightly hesitant to confront this jurisprudence because it plainly prohibits Marietta's claims.[29] Camden-Clark/WVUHS have established that the FCA's public policy bars Marietta's claims, and Marietta's only response is to mislead the Court regarding the record and applicable legal precedents. These efforts should fail.[30]

### IV. Neither the Discovery Rule Nor Allegations of Concealment Save Marietta's Claims.

The discovery rule does not save Marietta's claims. As Camden-Clark/WVUHS established in the Motion, with citations to the record properly before the Court, Marietta's claims are time-barred; Marietta does not cite to a single fact in the record to support its base-less assertion that the discovery rule applies and the argument should be disregarded. The McClure affidavit[31] does not establish a date certain for statute of limitations purposes or create an issue of fact given that the discovery rule asks when plaintiff knew or *reasonably should have known* a claim had accrued. Syl. Pt. 3, *Dunn v. Rockwell,* 689 S.E. 2d 255 (W. Va. 2009)

Additionally, under Fed. R. Civ. P. 9(b), when a plaintiff argues *res judicata* does not bar a subsequently filed action because a defendant intentionally concealed its involvement in a prior

---

[28] Defs.' Mem. Supp. Mot. Dismiss. at 13–14 (citing cases).
[29] *See* Defs.' Mem. Supp. Mot. Dismiss at 13–15.
[30] Marietta uses the same tactics to avoid addressing the lack of causation as a matter of law for alleged harm attributed to the government's FCA investigation. *See* Plfs.' Resp. at 19-20. Marietta's avoidance signals its inability to rebut this additional ground for dismissal. *See* Defs.' Mem. Supp. Mot. Dismiss at 15-17.
[31] Plfs.' Resp. at 20.

action, the plaintiff must plead specific facts with particularly to support the averment of fraud.[32] *See also Bailey v. United States*, 42 Fed. Appx. 79, 80–81 (9th Cir. 2022); *Mohr v. Deutsche Bank Nat'l Trust Co.,* Civ. No. 16-00493, 2019 U.S. Dist. LEXIS 99573, *17–19 (D. Haw. Jun. 13, 2019); *Janson v. Deutsche Bank Nat'l Trust Co.*, Case No.: 14-cv-05639, 2015 U.S. Dist. LEXIS 33719, * 25–26 (N.D. Cal. Mar. 18, 2015); *Anderson v. County of Jackson*, Civil No. 11-2660, 2012 U.S. Dist. 77451, *4–5 (D. Minn. June 5, 2012). Marietta's often-repeated, bare allegation that Camden-Clark/WVUHS "intentionally concealed" their support in *Marietta I* is legally insufficient to support any claim of fraud or concealment. There is not a single allegation in the Second Amended Complaint to support intentional concealment, much less the required specific allegations pled with particularity. It is not clear how Camden-Clark/WVUHS would have done so in any event. Even though Camden-Clark/WVUHS are in *res judicata* privity with the *Marietta I* defendants (again, taking Marietta's allegations as true), they were not themselves defendants in that litigation and as such had no way to conceal anything from Marietta.

V. **Marietta has Failed to State a Claim for Negligent Supervision.**

In the Motion, Camden-Clark/WVUHS cited a recent case from the Supreme Court of Appeals of West Virginia ("SCAWV") that provides a relevant holding and comprehensive analysis of the elements of negligent supervision under West Virginia law, *C.C. v. Harrison Cnty. Bd. of Educ.*, 245 W. Va. 594, 859 S.E.2d 762 (2021).[33] Camden-Clark/WVUHS confidently hangs their hat on the holding of *C.C.*, which provides a clear statement of the law governing Marietta's claim. Marietta's characterization of the holding and effect of *C.C.* is so outlandish that it can only be read as a deliberate attempt to mislead the Court.[34]

---

[32] *See* Defs.' Mem. Supp. Mot. Dismiss at 10–11.
[33] *See* Defs.' Mem. Supp. Mot. Dismiss at 23.
[34] Plfs.' Resp. at 22–25.

As an initial matter, the holding of *C.C.*—affirming the dismissal of a negligent supervision claim because the plaintiff failed to allege that the employee committed a negligent act while being negligent supervised—is not *dicta* by any stretch. The relevant language is not "superfluous" or "unnecessary" to the SCAWV's decision[35]; it is a statement of the applicable law and is the direct holding of the case. Marietta's attempt to minimize the relevance of the holding is simply untrue.

Furthermore, *C.C.* did not announce a new legal requirement that is required to be done in a syllabus point; rather, it was an application of the current controlling law, as the SCAWV made abundantly clear.[36] The SCAWV cited the decades-old case, *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719, 725 (2000), which provides that negligent supervision requires a showing of negligence on the part of the employee and the supervisor. *C.C.*, 859 S.E. at 774–75. The SCAWV specifically refers to the holding of *Taylor* as West Virginia's "current construction of a negligent supervision cause of action." *Id.* Furthermore, the SCAWV cited with approval a veritable smorgasbord of federal court cases—*including from this Court*—relying on the formulation of negligent supervision from *Taylor*, confirming without a doubt that *Taylor* is and has long been the controlling statement of the law in West Virginia. *Id.* at n.13.[37]

The true dicta and superfluous commentary in *C.C.* comes from the concurrences and dissents, which have no bearing on the case's holding and precedential value. The law of negligent supervision is not "unsettled," and no justice of the SCAWV implied that it was, even in dissent.[38]

---

[35] Plfs.' Resp. at 24.

[36] *C.C.*, 245 W. Va. at 606 ("[O]ur current definition of this cause of action requires, as a predicate prerequisite of a negligent supervision claim against an employer, underlying conduct of the supervised employee that also is negligent.").

[37] *See, e.g.*, *Selders v. MegaCorp Logistics, LLC*, Civil Action No. 2:14-CV-60, 2014 U.S. Dist. LEXIS 192474, at *3 (N.D.W. Va. Dec. 22, 2014) (Bailey, J.) (citing *Taylor* and dismissing negligent supervision claim when the "alleged acts in the Amended Complaint were intentional"); *Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 687 (N.D.W. Va. 2012) (Keeley, J.) (citing *Taylor* and holding that "a claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised").

[38] Plfs.' Resp. at 24. Marietta alleges that "trial courts in West Virginia have declined to adhere to the *dicta* in *C.C.*, applying instead the general principles of negligence," citing to a single circuit court case. Plfs.' Resp. at 24. The

Marietta's challenge to that holding based on its own warped interpretation of the precedential value of the law relied on by the SCAWV; it is jurisprudentially ungrounded that Marietta would ask this Court to second-guess the SCAWV's interpretation and application of West Virginia law. If the law of *Taylor* is good enough for the SCAWV, it must be good enough for this Court.

Marietta may not like the way that West Virginia has formulated the cause of action of negligent supervision and that West Virginia law may be different than other states or the Restatement.[39] Regardless, it is not the province of an Ohio hospital system to seek a rewrite of West Virginia state law through civil litigation in federal court. In the penultimate paragraph of its Response, Marietta appears to ask this Court to present a certified question to the SCAWV to "further clarif[y]" the elements of negligent supervision.[40] Such delay in resolution of the Motion is unnecessary, as West Virginia law on this point, odious as it may be to Marietta, is not unclear. Marietta admits that its claims are "intentional torts," and thus negligent supervision is not a viable claim.[41] The Court should dismiss Count VI.

### VI. Conclusion

Marietta's Response to Defendants' Motion to Dismiss asserts no viable legal arguments. As such, the Court should dismiss this case in its entirety with prejudice to avoid further waste of judicial resources and offense of equity.

---

absurdity of asking this Court to disregard a binding decision of the SCAWV because a state trial court misapplied the law is apparent.
[39] Plfs.' Resp. at 24–25.
[40] Plfs.' Resp. at 25.
[41] Plfs.' Resp. at 20.

Dated: September 8, 2023

        CAMDEN-CLARK MEMORIAL HOSPITAL CORPORATION, and
        CAMDEN-CLARK HEALTH SERVICES, INC.,

        BY COUNSEL:

/s/ *Susan W. Romaine*
Susan W. Romaine (WVSB #9936)
Andrew B. Cooke (WVSB #36564)
Sherrie Armstrong Davis (WVSB #11525)
Tessa L. Adkins (WVSB #13941)
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380 (25301)
P.O. Box 3824
Charleston, WV  25338-3824
Telephone:  304.414.1800
Email:  swromaine@tcspllc.com
       acooke@tcspllc.com
       sarmstrongdavis@tcspllc.com
       tadkins@tcspllc.com
Christine S. Vaglienti (WVSB#4987)
Assistant Vice President and Senior Litigation Counsel
West Virginia University Health System Legal Services
1238 Sunset Towne Centre
Morgantown, WV 26505
Telephone: 304.598.4199
Email: vaglientic@wvumedicine.org

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARIETTA AREA HEALTHCARE, INC., et al.,

    Plaintiffs,

v.                                                      Civil Action No. 5:23-cv-131
                                                             Judge Bailey

CAMDEN-CLARK MEMORIAL HOSPITAL
CORPIRATION, et al.,

    Defendants.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of same to counsel of record.

                                                /s/ *Susan W. Romaine*
                                                Susan W. Romaine (WVSB #9936)
                                                Andrew B. Cooke (WVSB #36564)
                                                Sherrie Armstrong Davis (WVSB #11525)
                                                Tessa L. Adkins (WVSB #13941)
                                                THOMAS COMBS & SPANN, PLLC
                                                300 Summers Street, Suite 1380 (25301)
                                                P.O. Box 3824
                                                Charleston, WV  25338-3824
                                                Telephone:  304.414.1800
                                                Email:  swromaine@tcspllc.com
                                                                    acooke@tcspllc.com
                                                                    sarmstrongdavis@tcspllc.com
                                                                    tadkins@tcspllc.com