IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MARIETTA AREA HEALTHCARE, INC.**
**MARIETTA MEMORIAL HOSPITAL,** and
**MARIETTA HEALTHCARE PHYSICIANS, INC.,,**

Plaintiffs,

v.

CIVIL ACTION NO. 5:23-CV-131
Judge Bailey

**CAMDEN-CLARK MEMORIAL HOSPITAL**
**CORPORATION, CAMDEN-CLARK HEALTH**
**SERVICES, INC., WEST VIRGINIA UNIVERSITY**
**HOSPITALS, INC.,** and **WEST VIRGINIA UNITED**
**HEALTH SYSTEM, INC.** d/b/a West Virginia
University Health System**,**

Defendants.

## ORDER

### I.     Introduction

Pending before this Court is Defendants' Motion to Dismiss [Doc. 32] and accompanying memorandum of law in support [Doc. 33], filed August 21, 2023. Plaintiffs filed a Response to Defendants' Motion to Dismiss [Doc. 42-1] on September 1, 2023. Defendants filed a Reply [Doc. 47] on September 8, 2023. Based upon the foregoing, this Court is of the opinion that the motion to dismiss will be denied.

### II.    Background

There are three (3) civil actions relevant to this case: (1) the underlying *qui tam* action; (2) the civil action in the Northern District of West Virginia that followed the

voluntary dismissal of the *qui tam* action (Civil Action Number 5:21-CV-25), referred to as **Marietta I**; and (3) the above-styled case, referred to as **Marietta II**.

i.      **The Underlying *Qui Tam* Investigation**

In 2016, Michael King, Dr. Michael Roberts, and Todd Kruger — allegedly acting with the approval of Defendants — initiated and pursued a *qui tam* action against Marietta Area Healthcare, Inc., Marietta Memorial Hospital, and Marietta Healthcare Physicians, Inc. (hereinafter collectively "Marietta") in the Northern District of West Virginia.  In large part, the *qui tam* complaint claimed that Memorial Health violated the Federal Claims Act by seeking and receiving healthcare reimbursements from federal healthcare programs while contravening the Stark Law and AKS.  The complaint alleged Memorial Health had paid certain physicians in excess of their fair market values in order to induce referrals.

The action was stayed under 31 U.S.C. § 3730(b)(2) while the Department of Justice investigated.  During the investigation, this Court extended the stay for six 180-day extensions.

After nearly three (3) years, federal investigators concluded that the allegations of the *qui tam* were unsubstantiated and informed Todd Kruger, Michael King and Dr. Michael Roberts ("Relators") that the Department of Justice would not intervene in the case.  *See* [Doc. 42-5].  On March 20, 2020, Kruger and Relators requested this Court to dismiss the Underlying Complaint and the *qui tam* action against Memorial Health.

On March 23, 2020, this Court granted the dismissal request and also unsealed certain docket entries in the *qui tam* action, including the Underlying Complaint. *See **King***

and ***Roberts v. Marietta Area Healthcare, Inc., et al.***, Civ. Act. No. 5:16-CV-175 [Doc. 43] (N.D. W.Va.) (Bailey, J.).[1]

   2.   *Marietta I*

Five (5) months after the *qui tam* action was dismissed, Marietta sued Relators. From September 2020 to May 2023, Marietta pursued a tort case against Michael King, Dr. Michael Roberts, and Todd Kruger[2] for alleged harm from the *qui tam* investigation. ***Marietta I***[3] was originally filed in the Southern District of West Virginia. ***Marietta I*** asserted claims for malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, fraudulent legal process, and requesting punitive damages against King and Roberts. ***Marietta Area Healthcare, Inc., et al. v. Michael A. King, et al.***, Civ. Act. No. 2:20-CV-639 [Doc. 4] (S.D. W.Va.) (Berger, J.).   Despite Marietta's opposition to transferring ***Marietta I*** out of the Southern District, the Southern District transferred ***Marietta I*** to the Northern District.[4] *Id.* at [Doc. 24].

---

[1] This Court later amended that order on April 24, 2020.  *See **King** and **Roberts v. Marietta Area Healthcare, Inc., et al.***, Civ. Act. No. 5:16-CV-175 [Doc. 45].

[2] ***Marietta I*** was not initially brought against Todd Kruger.  It was not until after discovery had been ongoing that Marietta learned of Mr. Kruger's involvement in the *qui tam* action.  In December 2021, Dr. Roberts produced documents that identified Mr. Kruger as having a role in pursuing the *qui tam*.  Marietta moved to amend its complaint, which this Court granted, to add Mr. Kruger on February 11, 2022. ***Marietta v. King et al.***, Civ. Act. No. 5:21-CV-25 [Docs. 97 & 105] (N.D. W.Va.) (Bailey, J.).

[3] ***Marietta Area Healthcare, Inc., et al. v. Michael A. King, et al.***, Civ. Act. No. 2:20-CV-639 (S.D. W.Va.) (Berger, J.).

[4] After ***Marietta I*** was transferred to the Northern District, Marietta amended its complaint to add Todd Kruger as a defendant.  *See  **Marietta v. King et al.***, Civ. Act. No. 5:21-CV-25 [Doc. 107] (N.D. W.Va.) (Bailey, J.)

*Marietta I* remained in the Northern District before the undersigned through trial and settlement. *See Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 (N.D. W.Va.) (Bailey, J.). The parties to *Marietta I* held a five-day jury trial beginning March 27, 2023. *Marietta I* ended in a mistrial because the jury deadlocked.

Marietta and Mr. Kruger then reached a settlement. On May 18, 2023, this Court dismissed Mr. Kruger with prejudice and closed the case. *See Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 547].

3.    *Marietta II*

While *Marietta I* was still pending, Marietta filed this action. *See* [Doc. 1]. This action, *Marietta II*, asserts that Camden-Clark Memorial Hospital Corporation, Camden-Clark Health Services, Inc., West Virginia United Health System, Inc., and West Virginia University Hospitals, Inc. (hereinafter collectively "Defendants") attempted to economically disadvantage Marietta by causing its agents and employees to initiate and pursue a spurious *qui tam* complaint against Marietta. Marietta seeks recovery based on Defendants' alleged role, vicarious and direct, in the pursuit and abuse of the fraudulent *qui tam*.

More specifically, the Second Amended Complaint[5] filed on July 31, 2023, alleges eight (8) causes of action: (1) malicious prosecution, (2) tortious interference with business relationships and expectancies, (3) abuse of process, (4) fraudulent legal process in

_____

[5] Marietta originally filed their Complaint [Doc. 1] on April 5, 2023. Marietta then filed an Amended Complaint [Doc. 6] on May 1, 2023. Defendants filed a Motion to Dismiss Amended Complaint [Doc. 16] on June 30, 2023. On July 28, 2023, Marietta moved for leave to file a Second Amended Complaint to add a claim for negligent supervision based on the same operative facts already pled [Doc. 25]. This Court granted Marietta's leave to file Second Amended Complaint [Doc. 27].

4

violation of W.Va. Code § 61-5-27a, (5) civil conspiracy, (6) negligent supervision, (7) aiding and abetting tortious conduct, and (8) vicarious liability.[6]  *See* [Doc. 28].

Defendants filed a Motion to Dismiss [Doc. 32] on August 21, 2023.  In the Motion, Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss with prejudice Marietta's claims because the claims are barred by *res judicata*.  Moreover, Defendants state the claims should also be dismissed because the claims are preempted by the False Claims Act, as against public policy, for failure to show causation as a matter of law, as time-barred under the applicable one- and two-year statutes of limitation, and for failure to state a claim.

In response, Marietta argues the Motion is premature and should be denied because "this case [is] ripe for discovery. . . ."  Moreover, Marietta argues *res judicata* does not bar this suit because Defendants fail to satisfy any of the elements.

## III.   Standard of Review

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also* ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences

---

[6] Marietta repeats five (5) of the claims from ***Marietta I***: (1) malicious prosecution, (2) tortious interference with business relationships and expectancies, (3) abuse of process, (4) fraudulent legal process, and (5) civil conspiracy.  Marietta asserts three (3) new claims for (1) negligent supervision, (2) aiding and abetting tortious conduct, and (3) vicarious liability.

in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro,*** 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." ***Twombly***, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." ***Williams v. Branker***, 462 F.App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F.App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id.*** at 396–97.

## IV.    Discussion

### 1.    *Res Judicata*

The doctrine of *res judicata* precludes relitigation of the same claim. *See **Sattler v. Bailey***, 184 W.Va. 212, 217, 400 S.E.2d 220, 225 (1990). Under *res judicata*, "a

6

judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Porter v. McPherson*, 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (1996) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, n.5 (1979)).

Under West Virginia law, *res judicata* is comprised of three elements:

First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 472, 498 S.E.2d 41, 44 (1997).

### i.      Final Adjudication on the Merits

Defendants must first establish that there was a final adjudication on the merits by a court having jurisdiction. "A final decision [is one] that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000) (internal citations omitted).

The parties dispute whether there was a final judgment on the merits in the first action by a court having jurisdiction of the proceedings.

Defendants argue it "should be beyond dispute that *Marietta I* ended with a final adjudication on the merits after the parties reached agreements to settle and the Court dismissed the case with prejudice." *See* [Doc. 33 at 7–8]. Defendants assert Camden-Clark and West Virginia University Health Services, even though not parties to *Marietta I*, satisfy this prong because Marietta alleges Camden-Clark and West Virginia University Health Services conspired with, negligently supervised, aided and abetted, and are "derivatively or vicariously liable for the conduct of . . . ' the *Marietta I* defendants.

Marietta argues there "are at least three problems with [Defendants] arguments." *See* [Doc. 42-1 at 12–13]. First, Marietta states they "did not settle with [Defendants] — only Kruger." Second, Marietta asserts the settlement agreement expressly preserved Marietta's right to pursue this action. Marietta argues the "agreement explicitly references this civil action and provides that Marietta's right to pursue this action is a condition of settlement. Importantly, WVU Medicine (via its agents at [Thomas Combs & Spann, PLLC]) reviewed and revised the final draft of the agreement that Marietta and Kruger signed, thus signifying WVU Medicine's *consent* to the non-finality of the agreement concerning this case." *See* [id. at 12]. Third, Marietta has several claims directly against defendants independent of any liability of Mr. Kruger.

For claim preclusion purposes, a "consent judgment" is "a final one on the merits." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure: Jurisdiction § 4443 at 385 (1981)); *Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 487 (4th Cir. 1981) ("We have . . . no difficulty in concluding . . . that the consent judgment in the state court constituted, for res judicata

purposes, a final judgment on the merits."); *Jacobs v. Venali,* **Inc.**, 596 F.Supp.2d 906, 914 (D. Md. Jan. 29, 2009) ("It is well established that dimissals with prejudice–including those resulting from settlement agreements or consent decrees–are treated as final judgments on the merits for purposes of res judicata."); *Claibourne v. Willis*, 347 Md. 684, 702 A.2d 293, 297 (1997) ("At least one effect of the dismissal with prejudice is the same as a court entered final adjudication of the merits.").

This Court finds *Marietta I* did involve a final adjudication on the merits. *Marietta I* ended after the parties reached agreements to settle and this Court dismissed the case with prejudice. Thus, Defendants have satisfied the first prong of *res judicata*.

ii. **Cause of Action**

Defendants must also establish that the cause of action identified for resolution in the instant suit is identical to the cause of action in the prior litigation. *See Blake*, 201 W.Va. at 472, 498 S.E.2d at 44. A "cause of action" is "the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. *Id*. at 476, 498 S.E.2d at 48. "The test to determine if the . . . cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues." *Id*. "If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata." *Id*.,; *see also Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W.Va. 476, 557 S.E.2d 883, 888 (2001) (when the claims are not identical, courts must apply the "same evidence" test to determine "whether two claims should be deemed to be the same for purposes of claim preclusion.").

Defendants argue that "[d]espite the addition of three newly-labeled claims, the causes of action are identical because *Marietta I* and *II* arise out of the same alleged transactions and facts (the *Qui Tam*, the United States's FCA investigation, and the actions of Kruger and Relators)." *See* [Doc. 33 at 10]. Defendants assert that even if this Court finds that the aiding and abetting, vicarious liability, or negligent supervision claims are "new," Marietta still could have asserted those claims against Camden-Clark/West Virginia University Health Systems in *Marietta I*, "sparing this waste of judicial resources." *See* [id.].

Marietta argues "[t]here is some overlap between the evidence underpinning *Marietta I* and *Marietta II*, to be sure." However, Marietta asserts that there is still evidence that needs developed, such as:

- Demonstrating the falsity of the specific *qui tam* allegations will remain an issue, which will necessarily require evidence related to Kruger;

- Proving vicarious liability will require evidence showing agency between WVU Medicine and Kruger;

- Marietta's direct liability claims will require direct evidence against WVU Medicine revolving around its own approval, pursuit, and abuse of the *qui tam* throughout the geography of its network;

- Marietta's negligent supervision claim will call for evidence of WVU's participation throughout the *qui tam* process; and

- Marietta's veil-piercing claim will require evidence of WVU Medicine's corporate structure and inter-corporate activity.

*See* [Doc. 42-1 at 15–16].

There is clearly overlap between the evidence underpinning *Marietta I* and *Marietta II*. Five (5) of the eight (8) causes of action asserted by Marietta in *Marietta II* are the same causes of action Marietta asserted against Kruger and Relators. However, Marietta did not learn about Defendants involvement until well into *Marietta I*. Defendants conduct was not developed in *Marietta I* and this Court finds even though there is obvious overlap between *Marietta I* and *Marietta II*, the cases do not involve the same claims.

### iii.    Same Party or their Privies

Finally, *Marietta I* must have involved the same parties, or persons in privity with those parties. "Privity is not established . . . from the mere fact that persons may happen to be interested in the same question or in proving the same facts." *State v. Miller*, 194 W.Va. 3, 13, 459 S.E.2d 114, 124 (1995) (citations omitted).   Rather, "the key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity, so as to ensure that the interest of the party *against whom* preclusion is asserted have been adequately represented." *West Virginia Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005) (emphasis added).

Privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *Rowe v. Grapevine Corp.*, 206 W.Va. 703, 715, 527 S.E.2d 814, 826 (1999) (citations omitted).   "[T]he privity concept is fairly elastic under West Virginia law, as elsewhere." *Gribben v. Kirk*, 195 W.Va. 488, 498, 46 S.E.2d 147, 157 n.21 (1995).

11

In agent-principal cases, privity "is always a fact-driven inquiry." ***Baker v. Chemours Co. FC, LLC***, 244 W.Va. 553, 562, 855 S.E.2d 344, 353 (2021); *see also* Syl. Pt. 2, ***Gentry v. Farruggia***, 132 W.Va. 809, 53 S.E.2d 741 (1949) ("Under the principal of *res judicata* the relationship of principal and agent does not per se establish a privity of interest.").

As an initial matter, none of the above-named Defendants were defendants in ***Marietta I***. This Court finds that Defendants interests do not align such that Defendants can claim that Mr. Kruger's day in court was their own. The evidence in this case shows that WVU Medicine fired Mr. Kruger when it first learned about the extent of his involvement in the *qui tam*. That firing led to an ongoing confidential arbitration between WVU Medicine and Mr. Kruger. WVU Medicine offered to indemnify in ***Marietta I*** only under a reservation of rights.

The issue of liability against Defendants was never resolved in ***Marietta I*** and Defendants' direct liability was never raised. As Marietta points out: "Had Marietta prevailed against Kruger at trial in ***Marietta I***, [Defendants] certainly would not concede that it would be bound by that judgment in any respect. [Defendants] would instead make the same argument it has made all along: that Kruger was a rogue actor and could not have represented its interests in court." *See* [Doc. 42-1 at 14].

Counsel for Mr. Kruger even took an adverse posture to Defendants in closing statements in ***Marietta I***:

But even more importantly, let's not -- let's talk about the elephant in the room. The reason Marietta brought this case is because they want to

12

send a message in the community that they're not going to be bullied and that if Camden Clark wants to come after them, they're going to have their hands full.

But why didn't they sue Camden? If they think Camden was behind this, if they think Mike King, as the CEO of Camden at the time, and Todd Kruger as the general counsel, they were acting on behalf of that entity, why didn't they sue Camden or WVU Medicine, the head of -- Camden's part of the WVU Medicine system. If they thought that there was a problem because their competitor in the market was doing something to try to hurt them, why not sue them? Why sue an individual who now doesn't work as a lawyer, boards horses for a living, and he and his wife live as empty nesters in Kentucky where he's trying to figure out what his next chapter's going to be in his life, and facing the stress and the potential -- the ruin associated with a lawsuit like this. Why didn't they sue somebody else? Certainly deeper pockets.

*Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 534 at 112].

Defendants cannot reasonably claim that they are in privity with Mr. Kruger under these circumstances. Defendants have had the opportunity to align their interests with Mr. Kruger. Instead, Defendants have fired Mr. Kruger; threatened to pull indemnification and representation; contractually assented to separating their interests from Mr. Kruger's by reviewing, revising, and approving the settlement in *Marietta I*; and Mr. Kruger's counsel removed any doubt as to whether Mr. Kruger was aligned with Defendants when

13

Mr. Kruger's counsel asked the jury, "Why didn't [Marietta] sue somebody else? Certainly deeper pockets."

Thus, this Court finds there is no privity between Defendants and Mr. Kruger. Because Defendants did not satisfy all elements of *res judicata*, this Court will not enforce *res judicata* and will now address Defendants arguments that (1) Marietta's claims are barred by the FCA; (2) Marietta's claims are untimely; and (3) Marietta fails to state valid claims for relief.

### 2. The FCA does not preempt Marietta's claims.

Defendants contend that (1) the FCA preempts Marietta's claims; (2) the FCA's public policy bars Marietta's claims; and (3) Marietta's claims fail for lack of causation under the FCA. *See* [Doc. 33 at 12–17].

### i. FCA Preemption[7]

Marietta argues this Court has already considered and rejected the FCA arguments in ***Marietta I***. As this Court has already held:

> "[F]ederal preemption is based on the Supremacy Clause, which provides that federal law 'shall be the supreme Law of the Land.'" ***Simmons v. Sabine River Auth. La.***, 732 F.3d 469, 473 (5th Cir. 2013) (quoting U.S. CONST. ART. VI, CL. 2). "Preemption radically alters the balance of state and federal authority, so the Supreme Court has historically refused to impose that alteration interstitially." ***White Buffalo Ventures, LLC v. Univ.***

---

[7] Defendants adopt the preemption arguments from ***Marietta I***, including but not limited to those raised in: ***Marietta Area Healthcare, Inc., et al. v. Michael A. King, et al.***, Civ. Act. No. 2:20-CV-639 [Docs. 14 & 20] (S.D. W.Va.) (Berger, J.) and ***Marietta v. King et al.***, Civ. Act. No. 5:21-CV-25 [Docs. 31, 37, 48 & 50].

*of Tex. at Austin,* 420 F.3d 366, 370 (5th Cir 2005) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).  This principle has been expressed as "a presumption against preemption of state law." *Id*. (citations omitted). *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 2015 WL 13649420, at *6 (S.D. Miss. Aug. 6, 2015) (Ozerden, J.).

"Federal law will preempt and displace state law in three circumstances: (1) when Congress enacts a statute that explicitly preempts state law; (2) when Congress regulates in such a pervasive manner that it can be inferred Congress intended to displace state law in the field and; (3) when state law actually conflicts with federal law. *See, e.g.*, *English v. Gen. Elec. Co.*, 496 U.S. 72, 78—79 (1990)." *Glynn v. EDO Corp.*, 536 F.Supp.2d 595, 609 (D. Md. 2008) (Motz, J.).

"Of course, our preemption inquiry must "'start [] with the basic assumption that Congress did not intend to displace state law.'" *S. Blasting* [*Servs., Inc. v. Wilkes County*], 288 F.3d at 589 (quoting *Maryland v. Louisiana*, 451 U.S. 725,746(1981)); *see also Cipollone* [*v. Liggett Group, Inc.*], 505 U.S. at 516 ('Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.' (internal quotation marks and alterations omitted)).  The purpose of Congress is therefore the 'ultimate touchstone' of a preemption analysis. *Cipollone*, 505 U.S. at 516 (internal quotation marks

omitted). As a general proposition, the presumption that Congress did not intend to preempt state law is especially strong when it has legislated '"in a field which the States have traditionally occupied," such as 'protecting the health and safety of their citizens.' *S. Blasting*, 288 F.3d at 590 (quoting *Medtronic, Inc. v. Loin'*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted)); *see also Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988). And, the presumption is stronger still 'against preemption of state remedies, like tort recoveries, when no federal remedy exists.' *Abbot*, 844 F.2d at 1112 (citing *Silkwood* [*v. Kerr McGee Corp.*], 464 U.S. at 251, 104 S.Ct. 615)." *Anderson v. Sara Lee Corp.*, 506 F.3d 181, 192 (4th Cir. 2007).

In making their argument, the defendants cite numerous cases and provide a primer on determining whether preemption exists. They do not, however, cite to any case in which a court found that the FCA in fact preempted state remedies for improper conduct - presumably because there are none.

The plaintiffs, on the other hand, cite a number of cases which find no preemption. *See e.g. Salazar v. Monaco Enterprises, Inc.*, 2015 WL 5716000, at *2 (E.D. Wash. Sept. 29, 2015) ("Defendants contend the False Claims Act ("FCA") provides an exclusive remedy. The published case law on this point holds to the contrary. *E.g.*, *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936 (7th Cir. 2002) ('There is nothing in

§ 3730(h) to lead us to believe that Congress intended to preempt all state law retaliatory discharge claims based on allegations of fraud on the government.'); *Glynn v. EDO Corp.*, 536 F.Supp.2d 595 (D. Md. 2006) ('complementary remedies do not give rise to an inference of Congressional intent to preempt'); *Hoefer v. FluorDaniel, Inc.*, 92 F.Supp.2d 1055 (C.D. Cal. 2000); *Palladino v. VNA of Southern N.J.*, 68 F.Supp.2d 455 (D. N.J. June 30, 1999) (holding no congressional intent to occupy the field of retaliatory discharge to the exclusion of the states). The Court finds these cases persuasive on the issue of preemption.").

"As one court recognized, '[w]hile the FCA] permits any person ... to bring a *qui tam* suit, it does not authorize that person to violate state laws in the process.'" *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 163 (2d Cir. 2013) (quoting *United States ex rel Doe v. X. Corp.,* 862 F.Supp. 1502, 1507 (E.D. Va. 1994) (Ellis, J.) (emphasis supplied).

The case law also makes clear that a defendant can bring state law claims which are independent of a finding of liability on the part of the defendant. "Counterclaims for indemnification or contribution by definition only have the effect of offsetting liability.  Counterclaims for independent damages are distinguishable, however, because they are not dependant on a qui tam defendant's liability." *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830—31 (9th Cir. 1993).

The *Madden* Court added:

17

To some extent a qui tam defendant's interests are adequately protected by specific provisions of the FCA. Section 3730(d)(4) of the FCA provides that a court may award the defendant reasonable attorney's fees and expenses if the defendant prevails and the action was brought in bad faith. Moreover, § 3730(d)(3) limits the award of a qui tam plaintiff deemed to be a wrongdoer.

These remedies are inadequate for two reasons, however. First, recovering damages under the FCA's attorney's fees provision is difficult because of the exacting standards that must be met. Under § 3730(d)(4) a qui tam defendant must establish that the plaintiff's action was clearly frivolous, clearly vexatious or brought primarily for the purpose of harassment. Second, these remedies do not provide for complete compensation. A qui tam defendant is not made whole because it is unable to recover for the actual harm it suffered as a result of the relator's conduct.

Thus, we hold that qui tam defendants can bring counterclaims for independent damages. . . .

We recognize that our decision may encourage qui tam defendants to bring counterclaims for independent damages instead of indemnification. However, we do not think this will result in an end run around *Mortgages*. As the court in **United**

18

> ***States ex ret Burch*** suggested, it is possible to resolve the
> issue of a qui tam defendant's liability before reaching the qui
> tam defendant's counterclaims.  145 F.R.D. at 457—58.  If a
> qui tam defendant is found liable, the counterclaims can then
> be dismissed on the ground that they will have the effect of
> providing for indemnification or contribution. On the other
> hand, if a qui tam defendant is found not liable, the
> counterclaims can be addressed on the merits.

4 F.3d at 831. *See also*, ***United States ex ret Battiata, M.D. v. Puchalski, M.D.***, 906 F.Supp.2d 451, 457 (D.S.C. 2012) (Currie, J.).

Similarly, in ***United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.***, Judge Lamberth held:

> On the other hand, courts have held that "a qui tam defendant
> may maintain a claim for independent damages; that is, a
> claim that is not dependent on a finding that the qui tam
> defendant is liable."  ***United States ex rel. Stephens v.
> Prabhu***, 1994 WL 761237, at *1 (D. Nev. 1994).  These cases
> recognize that not all counterclaims in FCA cases will be
> contrary to the statute's interests, and that there would be real
> due process concerns if all counterclaims were to be barred,
> particularly compulsory ones, which would be lost forever. *See*
> ***Burch ex rel U.S. v. Piqua Engineering, Inc.***, 145 F.R.D.

452, 456—57 (S.D. Ohio 1992) (expressing due process concerns); *Madden*, 4 F.3d at 830–31 (same); Kent D. Strader, Comment: ***Counterclaims Against Whistleblowers: Should Counterclaims Against Qui Tam Plaintiffs be Allowed in False Claims Act Cases?***, 62 U. Cinn. L.Rev. 713 (1993) (same).  For these reasons, it has been said that "the modern trend does not support a ban on compulsory counterclaims which are based on damages which are 'independent' of the qui tam claim." ***United States ex rel. Mikes v. Straus,*** 931 F.Supp. 248, 263 (S.D. N.Y. 1996).  Yet at the same time, these cases have warned that "[i]f a qui tam defendant is found liable the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution." ***United States ex ret Madden v. General Dynamics Corp.***, 4 F.3d 827, 830–31 (9th Cir. 1993).

*      *      *

The second category of permissible claims by an FCA defendant is where the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found not liable in the FCA case. This is where the word "independent" has sewn confusion. These claims are actually

quite dependent, but they depend on a finding that the FCA defendant is not liable, whereas the impermissible class of claims depend on the FCA defendant being found liable. The FCA defendant thus has a cause of action for damage to him independent of his FCA liability. These claims have surfaced in the form of libel, defamation, malicious prosecution, and abuse of process—claims that succeed upon a finding that the relator's accusations were untrue. Once the question of FCA liability has been determined in the defendant's favor, there is less of the risk, envisioned by **Mortgages** and other cases, of deterring would-be relators, and no risk that a wrongdoer will be allowed to shift its costs. The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA.

These cases demonstrate that there are two ways in which an FCA defendant's counterclaim may seek "independent damages" and thus be permissible. The use of the word "independent" has led to some confusion, and courts would be better served to describe the permissible claims as "not dependent on the fact of FCA liability." In short form, claims by an FCA defendant have been properly permitted where the

21

success of the FCA defendant's claim does not require a

finding that the defendant is liable in the FCA case.

505 F.Supp.2d 20, 27–28 (D. D.C. 2007) (Lamberth, J.).

Finally, in *United States ex rel. Rigsby v. State Farm Fire & Cas.*

*Co.*, Judge Ozerden added:

The Ninth Circuit has held that there is "no basis in the FCA or

federal common law to provide a right to contribution or

indemnity in a FCA action" and that "there can be no right to

assert state law counterclaims that, if prevailed on, would end

in the same result." *Mortgages [Inc. v. U.S. Dist. Ct. For*

*Dist. Of Nev. (Las Vegas)]*, 934 F.2d at 214.   The Ninth

Circuit   has   distinguished   counterclaims   which   seek

"independent damages" from those which seek indemnification

and/or contribution. *Cell Therapeutics [Inc. v. Lash Group*,

*Inc.]*, 586 F.3d at 1208 (citing *Madden*, 4 F.3d at 831).   "It is

incumbent on the district court to separate those claims which

'only have the effect of offsetting liability' from those that are

not dependent on a qui tam defendant's liability under the

FCA." *Id*. at 1209 (quoting *Madden*, 4 F.3d at 831) (emphasis

in original). Claims falling into the latter category are not

precluded, while the former ones "must be dismissed if [the qui

tam defendant] is liable under the FCA." *Id*. at 1210 (citing

22

> *Madden*, 4 F.3d at 831). The Court finds this reasoning
> persuasive.

2015 WL 13649420, at *6 (S.D. Miss. Aug. 6, 2015).

Based upon all the foregoing, this Court finds that there is nothing in the FCA which prevents the plaintiff from maintaining its state court actions against these defendants.

*Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 40 at 3–10]. In *Marietta I*, this Court allowed an interlocutory appeal of the preemption issue [Doc. 51], which the Fourth Circuit rejected. Thus, this Court **DENIES** Defendants request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

### ii. FCA Public Policy

Defendants argue independent of preemption, Marietta's claims are barred by public policy because Marietta's FCA liability, and the related question of the truth or falsity of Relators' and Kruger's allegations, is unresolved. *See* [Doc. 33 at 13–15].

Marietta argues Defendants invoke the same line of cases that this Court was called to consider in *Marietta I*, prominently the D.C. District Court's decision in *United States ex rel. Miller v. Bill Harbert Intern. Const., Inc. See* [Doc. 42-1 at 19].

This Court has already determined that *Miller* explicitly permits Marietta's claims in this case. Defendants assert Marietta cannot bring an action to prove falsity because falsity has not already been proven in a final decision – that is, in a favorable termination of the *qui tam*. However, favorable termination is better suited for consideration as an element of Marietta's claim for malicious prosecution.

23

### iii.    Causation under FCA

Defendants argue Marietta cannot show causation of its claims grounded on the *qui tam* filing because the *qui tam* was filed under seal, promptly stayed, and no case activity beyond administrative filings to extend the stay occurred.  Defendants argue no harm can flow from these circumstances because the *qui tam* was dismissed before Marietta was served.  *See* [Doc. 33 at 15–17].

Marietta argues that this Court has already rejected this argument several times when the **Marietta I** defendants argued that they did not "procure" the prosecution of Marietta under a claim for malicious prosecution.

This Court held in **Marietta I** that "there is a genuine issue of material fact as to whether the procurement element is satisfied." **Marietta v. King et al.**, Civ. Act. No. 5:21-CV-25 [Doc. 426 at 12].  Even though Marietta had no control over the Government's investigatory decisions, methods, or resources, or the time the Government took to complete its investigation, it is still yet to be seen if Defendants "continued to attempt to convince the Government to intervene and move forward with a *qui tam* lawsuit even after knowing the Government had decided otherwise." **Id**.

### 3.    It is premature for this Court to determine whether Marietta's claims are timely or untimely and whether the discovery rule tolls the applicable statutes of limitation.

Defendants next argue that Marietta's claims are untimely.  *See* [Doc. 33 at 17–23]. More specifically:

- One-year statutes of limitation bar Marietta's claims for malicious prosecution and abuse of process [id. at 17–18];

- Two-year statutes of limitation bar Marietta's claims for tortious interference, fraudulent legal process, and negligent supervision [id. at 18–20];

- The claims for conspiracy, aiding and abetting, and vicarious liability are also untimely [id. at 20–21].

Defendants also argue that neither the discovery rule nor tolling applies.

Marietta argues its claims are timely under the discovery rule and because Defendants fraudulently concealed their involvement in the *qui tam*. *See* [Doc. 42-1 at 20–22].

The Supreme Court of Appeals of West Virginia has set forth a five-step test to apply when determining whether a cause of action is barred by the statute of limitation:

First, the court should identify the applicable statute of limitation for each cause of action.  Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred.  Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of ***Gaither v. City Hosp., Inc.***, [199 W.Va. 706, 715, 487 S.E.2d 901, 909 (1997).]  Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action.  Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of

25

action, the statute of limitation is tolled.  And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.  Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Dunn v. Rockwell*, 225 W.Va. 43, 53, 689 S.E.2d 255, 265 (2009).

### i.     The applicable statutes of limitation

This Court will address each of Marietta's claims with respect to the applicable statutes of limitations provided for each cause of action.

### a.     Malicious Prosecution

"An action for malicious prosecution must be brought within one year from the termination of the action alleged to have been maliciously prosecuted."  Syl. Pt. 2, in part, *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22 (1985).

### b.     Abuse of Process

"An action for abuse of process must be brought within one year from the time the right to bring the action accrued."  Syl. Pt. 3, *Preiser*, 177 W.Va. 273, 352 S.E.2d 22.

### c.     Tortious Interference with Business Relationships and Expectancies

"An individual's right to conduct a business or pursue an occupation is a property right.  The type of injury alleged in an action for tortious interference with business relationship is damage to one's business or occupation.  Therefore, the two-year statute of limitations governing actions for damage to property, set forth under W.Va. Code, 55-2-12 [1959], applies to an action for tortious interference with business relationship."

26

Syl. Pt. 6, *Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n*, 190 W.Va. 214, 438 S.E.2d 6 (1993).

### d.    Fraudulent Legal Process

Marietta asserts a claim for fraudulent legal process in violation of W.Va. Code § 61-5-27a.  The statute does not contain a temporal limitation, but the relevant injuries include infringements of property rights, namely, the "loss of benefits of existing and prospective business relationships, reputational harm, [and] lost business."  Thus, the two-year statute of limitations for damage to property should apply.  *See* Syl Pt. 6, *Garrison*, 190 W.Va. 214, 438 S.E.2d 6; W.Va. Code § 55-2-12.

### e.    Negligent Supervision

Like the claim for tortious interference with business relationships and expectancies, negligent supervision is governed by the same two-year statute of limitations in W.Va. Code § 55-2-12.  *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W.Va. 578, 583, 567 S.E.2d 294, 299 (2002).

### f.    Conspiracy

"[T]he statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based. . . ."  *Dunn*, 225 W.Va. at 57, 689 S.E.2d at 269; *see also* 16 Am. Jur. 2d "Conspiracy" § 65 (2009) ("the statute of limitations applicable to civil conspiracy is that applicable to the underlying wrong").

### g.    Aiding and Abetting

The Southern District of West Virginia has applied the two-year statute of limitations under W.Va. Code § 55-2-12(b) to aiding and abetting a tort.  ***W.W. McDonald Land Co. v. EQT Prod. Co.***, 983 F.Supp.2d 790, 811 (2013) (Goodwin, J.).

### h.    Vicarious Liability

"Because the employer may only be held liable to the extend that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment, the applicable statute of limitation is determined by the tortious act of the employee."  Syl. Pt. 12, in part, ***Dunn***, 225 W.Va. at 47, 689 S.E.2d at 259.

### ii.    When the Requisite Elements of the Cause of Action Occurred

The second step under the ***Dunn*** test is to identify when the requisite elements of the cause of action occurred. Here, it cannot be disputed that the requisite elements of the cause of action occurred from the time the *qui tam* action was filed up and until ***Marietta I*** was filed.

### iii.    Discovery Rule

The third step of the ***Dunn*** test relates to when Marietta knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. During this step, the Court assesses whether to toll the accrual of the claim under what is known as the "discovery rule":

In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1)

28

> that the plaintiff has been injured, (2) the identity of the entity who owed the
> plaintiff a duty to act with due care, and who may have engaged in conduct
> that breached that duty, and (3) that the conduct of that entity has a causal
> relation to the injury.

Syl. Pt. 4, *Gaither*, 199 W.Va. at 708, 487 S.E.2d at 903.  Whether a plaintiff knew or should have known of the cause of action is an objective test:

> Under the discovery rule set forth in Syllabus Point 4 of *Gaither v. City*
> *Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff
> "knows of" or "discovered" a cause of action is an objective test.  The plaintiff
> is charged with knowledge of the factual, rather than the legal, basis for the
> action.  This objective test focuses upon whether a reasonable prudent
> person would have known, or by the exercise of reasonable diligence should
> have known, of the elements of a possible cause of action.

Syl. Pt. 4, *Dunn*, 225 W.Va. at 46, 689 S.E.2d at 258.

Defendants argue that the "undisputed facts make it clear Marietta reasonably should have known of Camden-Clark/WVUHS's relationship to Relators at the time it filed *Marietta I*."  *See* [Doc. 33 at 21–22].  Defendants assert Marietta "obtained the key piece of the puzzle" by at least April 24, 2020, when the Relators' identities were revealed.  And by September 20, 2020, when *Marietta I* was filed, defendants argue Marietta "had or reasonably should have had knowledge of its alleged injuries, the alleged causal relationship connecting Relators to its injuries, and of Camden-Clark/WVUHS's relationship with at least one Relator (King, who Marietta at the time acknowledged was 'a former

officer of Camden Clark Medical Center')."  [Id. at 22].  Defendants state Marietta "cannot plausibly contend that it could not discover with exercise of reasonable diligence that Camden-Clark/WVUHS were allegedly involved, especially once armed with the powerful tool of federal civil discovery (which it even used to subpoena documents from Camden-Clark in *Marietta I*)."  [Id].

Marietta argues "[n]o reasonable person could have known WVU Medicine's identity or that WVU Medicine caused Marietta's injuries until Kruger produced the McClure affidavit, at the earliest."  [Doc. 42-1 at 20].  Marietta asserts that Relators — a *former* CEO and an independent surgeon — were the only identified parties on the face of the *qui tam* complaint.  Moreover, Marietta argues that "[w]e now know that Relators refused to turn over documents that Marietta requested, which would have revealed Kruger's involvement earlier.  The fact that Relators failed to comply with their discovery obligations and withheld documents is not Marietta's fault, nor could it be any reasonable litigant's."  [Id. at 21].

After carefully examining the record, this Court agrees with Marietta's position.  At the very beginning of this very long *qui tam* saga, Marietta was only aware of two Relators — Michael King and Dr. Michael Roberts.  In December 2021, Dr. Roberts produced documents that identified Mr. Kruger as having a role in pursuing the *qui tam*.  Marietta moved to amend its complaint, which this Court granted, to add Mr. Kruger on February 11, 2022.  The addition of Mr. Kruger came nearly 1.5 years after Marietta initially filed suit.  Was Marietta supposed to assume that Mr. Kruger's alleged fraudulent and malicious

abuse of the judicial process had the institutional backing of Defendants?   Would Defendants have preferred Marietta file "groundless fishing expedition[s]"?

Defendants point out that Marietta references Camden-Clark twenty (20) times in the initial *Marietta I* complaint.   However, Marietta referenced Camden-Clark in its Complaint because Relators used Camden-Clark in the *qui tam* as the benchmark for market rates for physician compensation.

Defendants also point out that Marietta used discovery in *Marietta I* to subpoena documents from Camden-Clark in *Marietta II*.   The Notice of Intent to Serve Subpoena was filed on May 10, 2022.   *See Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 156].   May 10, 2022, is after Marietta added Mr. Kruger to *Marietta I*, and if used to anchor Marietta's discovery rule in this case, places *Marietta II* within the statute of limitations.

However, this Court finds the arguments of whether the discovery rule applies (or does not apply) to be premature.   "In a great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury."   *Gaither*, 199 W.Va. at 714–15, 487 S.E.2d at 909–10.   It is clear to this Court that there are disputes of material fact.   The question that lingers is whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

Because this case is only at the 12(b)(6) stage, this Court declines to determine whether the discovery rule applies at this stage of the litigation.

### iv.    Fraudulent Concealment of Facts

Just like the discovery rule determination, the determination of whether Defendants fraudulently concealed facts turns on factual disputes that cannot be resolved so early in this case.  Thus, this Court also declines to determine whether Defendants fraudulently concealed their involvement and its identity in the *qui tam* action.

### v.    Tolled by Any Other Doctrine

The fifth and final step of the **Dunn** test is to "determine if the statute of limitation period was arrested by some other tolling doctrine." **Id**.

The parties have not pointed out and/or argued that other tolling doctrines apply.

### 4.    Marietta has properly stated claims for relief for all but the claim for negligent supervision, which this Court defers ruling on at this time.[8]

Marietta argues that this Court "need not consider anew" the already rejected arguments Defendants advance. *See* [Doc. 42-1 at 22–25].  Marietta also asserts that this Court should also reject Defendants arguments as to Marietta's negligent supervision claim because Marietta has sufficiently alleged that Defendants failed to properly supervise Mr. Kruger in his pursuit of an alleged baseless *qui tam* action against Marietta, and that Mr. Kruger's actions injured Marietta.  [Id. at 23].

### i.    Count I - Malicious Prosecution

To successfully state a claim for malicious prosecution at the pleading stage, a plaintiff must allege that "'(1) that the prosecution was malicious, (2) that it was without

---

[8]    Defendants adopt the arguments advanced by the **Marietta I** defendants, including but not limited to those raised in: **Marietta Area Healthcare, Inc., et al. v. Michael A. King, et al.**, Civ. Act. No. 2:20-CV-639 [Doc. 13] (S.D. W.Va.) (Berger, J.) and **Marietta v. King et al.**, Civ. Act. No. 5:21-CV-25 [Docs. 37, 48, 50, 141, 158, & 420].

reasonable or probable cause, and (3) that it terminated favorably to plaintiff.'" *See* Syl. Pt. 1, *Norfolk S. Ry. Co. v. Higginbotham*, 228 W.Va. 522, 721 S.E.2d 541 (2001) (citation omitted).

Seeing as the parties both incorporate arguments from *Marietta I*, this Court will do the same.[9]  As this Court held in *Marietta I*:

As this Court previously held: "The [Amended] complaint alleges just that: defendants maliciously initiated and continued a qui tam action against plaintiffs that was based on knowing falsities and that was ultimately terminated in plaintiffs' favor by a district court order." *See* [Doc. 40 at 11].

Defendants again seek dismissal on the basis that the fact that the underlying action was dismissed without prejudice bars a claim for malicious prosecution. *See* [Doc. 118 at 14–17].  Defendants rely on one of the same cases as their last Motion to Dismiss: *Goodwin v. City of Shepherdstown*, 241 W.Va. 416, 825 S.E.2d 353, 396 (2019).  This Court already stated:

This Court finds that the cases cited by the defendants are inapposite.  While *Goodwin v. City of Shepherdstown*, 241 W.Va. 416, 825 S.E.2d 363, 369 (2019) . . . discuss[es] a requirement that the underlying proceeding be terminated such that it could not be raised again, *Goodwin* dealt with a criminal

---

[9] Both parties heavily rely on all briefing done in *Marietta I* on not only the original Complaint [Civ. Act. No. 5:210-CV-25 Doc. 4] but the Amended Complaint [Civ. Act. No. 5:21-CV-25 Doc. 107] as well.  After review of all three complaints, the Amended Complaint in *Marietta I* and the Amended Complaint in *Marietta II* bear the most similarities.  Thus, this Court will in turn rely heavily on its most recent rulings on the Amended Complaint in *Marietta I*.

matter where the case was dismissed without prejudice "for now. . . ." The facts of this case are much different. The complaint was dismissed without prejudice before the now plaintiffs were even aware of the action. The dismissal ended that action. While the notation of without prejudice means that a new case could be filed, this case is ended.

What would the opposite finding mean? It would mean that any time an action is dismissed without prejudice and not re-filed, there could **never** be an action for malicious prosecution.

[Doc. 40 at 12].

Plaintiffs again point to Syl. Pt. 3, *Vinal v. Core*, 18 W.Va. 1 (1881). As stated in this Court's previous order:

*Vinal v. Core*, which states that "By the first of these requirements is meant that the plaintiff must have been arrested under a process not absolutely void; and by its being ended is meant, not that the plaintiff had been so discharged, as that no subsequent prosecution for the same alleged crime could ever be instituted, but only that this particular prosecution was ended, when this was the allegation in the declaration." 18 W.Va. 1 (1881).

[Id. at 11–12].

34

*Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 134 at 7–8].  The Complaints in both *Marietta I* and *Marietta II* mirror each other.  Seeing as this Court has already ruled that plaintiffs have stated a claim for malicious prosecution in their Complaint in *Marietta I* for the same cause of action, this Court will **DENY** Defendants motion to dismiss Marietta's <u>malicious prosecution claim</u> in the above-styled case.

### ii.   Count II - Tortious Interference with Business Relationships & Expectancies

A claim for tortious interference exists where the plaintiff can demonstrate "(1) [the] existence of a contractual or business relationship or expectancy; (2) an intentional act of improper interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages."  Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983).

Initially, this Court dismissed this Count in *Marietta I* because it was barred by the litigation privilege.  *See  Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 40 at 12–14].  Marietta filed an Amended Complaint and reasserted the claim for tortious interference with business relationships but added a third defendant, Mr. Kruger.  However, after reviewing Marietta's Amended Complaint, this Court determined that Marietta's "allegations now include different facts and a change in the circumstances than what this court relied on in its April 28, 2021 Order dismissing Count II." [Doc. 134 at 11].

Defendants do not advance any additional arguments in their current Motion to Dismiss.  Thus, this Court holds, at this stage in the litigation, that Marietta's Complaint alleges enough facts to state a claim to relief that is plausible on its face.  Thus, this Court

will **DENY** Defendants motion to dismiss Marietta's <u>tortious interference with business relationships and exceptancies claim</u> in the above-styled case.

### iii.    Count III - Abuse of Process

Under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by the process." *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22, 28 (1985).

As this Court held in its April 8, 2022 Order in *Marietta I*,

> Defendants argue that plaintiffs' abuse of process claim must be dismissed because the claim is barred by the litigation privilege. *See* [Doc. 118 at 13–14]. Defendants assert that plaintiffs' abuse of process claim "is based solely on Defendants filing the *qui tam* action." *See* [Id. at 14]. Because the filing of a complaint is an action that falls within the course of a judicial proceeding, defendants argue the litigation privilege applies and plaintiffs' abuse of process claim fails as a matter of law.
>
> According to Justice Davis' statements in her concurrence in *Barefield v. DPIC Companies, Inc.*, 215 W.Va. 544, 600 S.E.2d 256 (2006):
>
> > Under the litigation privilege, " '[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is ... privileged and cannot constitute the basis of a civil action[.]' " *Jenevein v. Friedman*, 114 S.W.3d 743, 745 (Tex. App. 2003) quoting *Reagan v. Guardian Life Ins. Co.*,

36

140 Tex. 105, 166 S.W.2d 909, 912 (1942).  *See also Collins v. Red Roof Inns, Inc.*, 211 W.Va. 458, 461–66, 566 S.E.2d 595, 598–603 (2002) (discussing litigation privilege).  "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 917–18 (Tex. 1982).  The public

> policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 693 (2003).  "[T]he litigation privilege

37

extends beyond claims of defamation to claims of abuse of

process, intentional infliction of emotional distress, negligent

misrepresentation, invasion of privacy, ... and ... interference

with contract and prospective economic advantage." *Pacific*

*Gas & Elec. Co. v. Bear Sterns & Co.*, 50 Cal.3d 1118, 1132,

270 Cal.Rptr. 1, 791 P.2d 587 (1990) (citation omitted). *But*

*see Baglini v. Lauletta*, 338 N.J.Super. 282, 768 A.2d 825,

833–34 (2001) ("The one tort excepted from the reach of the

litigation privilege is malicious prosecution, or malicious use of

process.").

215 W.Va. 544, 560, 600 S.E.2d 256, 272 (2004) (Davis, J.,

concurring).   *See BriovaRx, LLC v. Johnson*, 2014 WL

12744704, at *3 (S.D. W.Va. July 2, 2014) (Chambers, C.J.).

*Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 134 at 11–13].

Just as this Court held in *Marietta I*, this Court is still of the opinion that Marietta

alleges enough facts to state a claim to relief that is plausible on its face.  Again, the

complaints in *Marietta I* and *Marietta II* are very similar; the only difference is the named

defendants.  Thus, this Court **DENIES** Defendants' Motion to Dismiss to plaintiffs' <u>abuse</u>

<u>of process</u> claim.

38

### iv.     Count IV - Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a

West Virginia Code § 61-5-27a, provides as follows:

(b) *Fraudulent[10] official proceedings*.- It is unlawful for a person to knowingly

engage in a fraudulent official proceeding or legal process.[11]

(c) *Fraudulent filings*.- It is unlawful for a person to knowingly cause a public

official or employee to file, record or deliver a fraudulent claim in

indebtedness, common law lien or other lien, financial statement, complaint,

summons, judgment, warrant or other legal process, including those issued

as the result of a fraudulent official proceeding.

(d) *Fraudulent service*.- It is unlawful for a person to knowingly serve a public

official or employee with a fraudulent claim of indebtedness, common law

lien or other lien, financial statement, complaint, summons, judgment,

warrant or other legal process, including those issued as the result of a

fraudulent official proceeding.

. . .

(h) *Civil cause of action*.- A person who violates this section is liable in a civil

action to any person harmed by the violation for injury or loss to person or

property incurred as a result of the commission of the offense and for

---

[10] "'Fraudulent' means not legally issued or sanctioned under the laws of this State or of the United States, including forged, false, and materially misstated[.]." *See* W.Va. Code § 61-5-27(a)(1).

[11] "'Legal process' means an action . . . to pursue a claim against person or property." *See* W.Va. Code § 61-5-27(a)(2).

reasonable attorney's fees, court costs and other expenses incurred as a result of prosecuting the civil action commenced under this subsection, which is not the exclusive remedy of a person who suffers injury or loss to person or property as a result of a violation of this section.

(i) *Civil sanctions.-* In addition to the criminal and civil penalties set forth in this section, a fraudulent official proceeding or legal process brought in a tribunal in violation of this section shall be dismissed by the tribunal and the person may be ordered to reimburse the aggravated person for reasonable attorney's fees, court costs and other expenses incurred in defending or dismissing such action.

W.Va. Code § 61-5-27a(b)–(d), (h)–(i).

Again, "[a]t this juncture of the case, this Court cannot agree.  Assuming all allegations as true, resolving all doubts and inferences in favor of the Marietta, and viewing the allegations in a light most favorable to Marietta, Marietta has sufficiently alleged a claim for Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a." [Doc. 134 at 16]. Thus, this Court will **DENY** Defendants' Motion to Dismiss Marietta's <u>fraudulent legal process in violation of W.Va. Code § 61-5-27a</u> claim.

### v.      Count V - Civil Conspiracy

A civil conspiracy exists where "two or more persons by concerted action" combine "to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. Pt. 8, ***Dunn***, 225 W.Va. 43, 689 S.E.2d 255.  The civil conspiracy cause of action is created "by the wrongful acts done by the defendants to the injury of the

plaintiff." *Id*.  That is, defendants must "have committed 'some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff.'" *Blankenship v. Napolitano*, 451 F.Supp.3d 596, 620 (S.D. W.Va. 2020) (quoting *Dunn*, 225 W.Va. 56–57, 689 S.E.2d at 268–69).

Although "not every member of a conspiracy must be aware of every action taken in furtherance of it," each conspirator is liable for every tort produced by the conspiracy, including one "who promoted but did not commit the tort." *Jane Doe-1 v. Corp. of Pres. of The Church of Jesus Christ of Latter-day Saints*, 239 W.Va. 428, 458, 801 S.E.2d 443, 473 (2017).

Here, Defendants do not add any additional argument with respect to Marietta's civil conspiracy claim.  In *Marietta I*,

> Defendants' Motion contain[ed] two conclusory arguments regarding plaintiffs' civil conspiracy claim.  First, there [was] a three (3) sentence paragraph on page 2 and second, a two (2) sentence footnote, both stating, in conclusory fashion, that Count V fails to state a claim.  These two (2) sections d[id] not, however, raise or preserve this argument for review.  *See Sanders v. Callender*, 2018 WL 337756, at *7, n.5 (D. Md. July 9, 2018) (Chasanow, J.) (collecting cases holding that a party who presents an argument solely in a footnote does not raise the argument for adjudication).  In the footnote, defendants argue[d] that the Amended Complaint for civil conspiracy "does not, in itself, state a claim.  'A conspiracy is not itself, a tort,

41

and each tort, not the conspiracy, that is actionable.' *Dunn v. Rockwell*, 225 W.Va. 43, 57, 689 S.E.2d 255, 269 (2009) (citation omitted)." *See* [Id.].

The United States Court of Appeals for the Fourth Circuit has explained that ruling on an issue minimally addressed is "unfair to [opposing party] and would risk an improvident or ill-advised opinion on the legal issues raised." *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cr. 1995).  This reasoning has led district courts to decline to consider arguments only raised in a footnote.  *See, e.g.*, *Connectus LLC v. Ampush Media, Inc.*, 2017 WL 2620541, at *8 (M.D. Fla. June 16, 2017) ("While [Defendant's] motion for summary judgment and reply each contained a single footnote regarding the evidence necessary to obtain exemplary damages or attorney's fees under CUTSA and why the limitation-of-liability clause should apply, respectively, those footnotes were buried under subsections devoted to different issues. Those footnotes did not sufficiently raise [the] arguments."); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumba S.A. De C.V.*, 247 F.Supp.3d 76, 100 (D.D.C. 2017) (Contreras, J.) (finding that a footnote without a structured argument did not raise a defense); *Rowley v. City of New York*, 2005 WL 2429514, at *6 (S.D. N.Y. Sept. 30, 2005) ("As to an argument raised in a footnote, that [the] excessive force claim s be dismissed, this also may not be properly considered.").

*Marietta v. King et al.*, Civ. Act. No. 5:21-CV-25 [Doc. 134 at 16–17].

If Defendants wanted to raise additional argument with respect to Marietta's civil conspiracy claim, it should have done so in the pending Motion to Dismiss. Thus, at this stage of the proceeding, this Court is of the opinion that Marietta alleges enough facts to state a claim to relief that is plausible on its face. This Court **DENIES** Defendants' Motion to Dismiss Marietta's <u>civil conspiracy</u> claim.

### vi.    Negligent Supervision[12]

The body of case law concerning negligent supervision in West Virginia "is sparse." *C.C. v. Harrison County Board of Ed.*, 245 W.Va. 594, 606, 859 S.E.2d 762, 774 (2021). The most recent Supreme Court of Appeals of West Virginia decision discussing negligent supervision is *C.C. v. Harrison County Board of Ed.*, 245 W.Va. 594, 859 S.E.2d 762 (2021). In *C.C.*,[13] the Supreme Court of Appeals of West Virginia was evaluating an appeal based on the Circuit Court of Harrison County's dismissal of a claim for negligent supervision. 245 W.Va. at 605–608, 859 S.E.2d at 773–776.[14] The *C.C.* Court averred:

> **2. Negligent Supervision.** The Petitioners next argue that the circuit court erred by dismissing their claim in Count 6 of their complaint for negligent supervision. In this respect, the Petitioners allege that the Board

---

[12] Despite there being three (3) new causes of actions alleged by Marietta in the Amended Complaint, both parties only spend time addressing negligent supervision. The other two (2) causes of action of aiding and abetting tortious conduct and vicarious liability are not discussed.

[13] *C.C.* involved parents of a transgender student bringing a negligence action against the county board of education arising from an incident in which a high school assistant principal verbally harassed and trapped the student in a school bathroom.

[14] The appeal also involved many other causes of action, none of which are relevant to this case.

negligently supervised its employee, the Assistant Principal. The circuit court dismissed this claim based upon its analysis that the Petitioners had failed to state a valid claim for negligent supervision because they failed to plead facts sufficient to support such a claim. We agree with this conclusion, also.

In rendering its ruling, the circuit court explained that "[a] negligent supervision claim prevails when the party shows that the employer failed to supervise its employee, and as a result, the employee committed a negligent act and caused injury. *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W.Va. 128, 134, 538 S.E.2d 719, 725 (2000) [(per curiam).]" The circuit court further noted that "'West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence.' *Carroll v.USAA Sav. Bank*, CV 3:16-11120, [2017] WL 811491, *1, *3 (S.D. W.Va. Mar. 1, 2017) [(Chambers, C.J.)][.]" (Additional citations omitted). Relying on these authorities, the circuit court then concluded that

> Plaintiffs [the Petitioners] fail to allege any conduct whatsoever that is negligent ... all conduct performed by [the Assistant Principal] is intentional.... Plaintiffs' [the Petitioners'] negligent supervision claim fails because Plaintiffs [the Petitioners] have pleaded no set of facts in support of an underlying negligence claim which would entitle Plaintiffs [the Petitioners] to relief.

The circuit court's analysis finding that the Petitioners have failed to state a claim upon which relief could be granted as to their claim in Count 6 for negligent supervision is correct. Although our body of caselaw

44

concerning negligent supervision is sparse, our current definition of this cause of action requires, as a predicate prerequisite of a negligent supervision claim against an employer, underlying conduct of the supervised employee that also is negligent. *See Taylor*, 208 W.Va. at 134, 538 S.E.2d at 725. In *Taylor*, we specifically recognized that "[t]he ... claim of negligent supervision must rest upon a showing that the [employer] failed to properly supervise [its employee] and, as a result, [the employee] committed a negligent act which proximately caused the appellant's injury." *Id*. This definition of a negligent supervision claim in West Virginia also has been adopted by our federal courts. *See, e.g.*, *Launi v. Hampshire Cty. Prosecuting Attorney's Off.*, 480 F.Supp.3d 724 (N.D. W.Va. 2020) [(Groh, C.J.)] (memorandum opinion and order) ("'Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised.' *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W.Va. 128[, 134], 538 S.E.2d 719, 725 (2000) [(per curiam)]."). Therefore, under this Court's current construction of a negligent supervision cause of action, the circuit court correctly dismissed the Petitioner's cause of action for negligent supervision in Count 6 of their complaint because all of the allegedly wrongful conduct with which the Petitioners charge the Assistant Principal is intentional–false imprisonment, assault, sexual harassment, and intentional infliction of emotional distress–that, because it

45

is not negligent, cannot form the basis of a negligent supervision claim.
Thus, because all of the acts alleged to have been committed by the
Assistant Principal were comprised of intentional conduct, the circuit court
correctly ruled that the Petitioners had not made the requisite predicate
showing of the Assistant Principal's negligence to support a claim of
negligent supervision by the Board and that their claim in this regard should
be dismissed.

245 W.Va. at 605–607, 859 S.E.2d at 773–776. However, this Court is of the opinion that
the law with respect to negligent supervision remains unsettled in West Virginia and agrees
with Justice Hutchinson:

I strenuously dissent, however, to the majority opinion's discussion of
the law regarding a negligent supervision claim.   Instead of stopping its
discussion after applying Rule 12(b)(6) and stating that the petitioner's
complaint factually failed to state a claim, the majority decided to go one step
further and prop up its determination with quotes from the circuit court's
pronouncement of the law regarding a negligent supervision claim.   That
discussion fo the law is a house of cards destined to fall.   Therefore, I warn
lawyers not to rely upon the majority's legal discussion because it has little
precedential value beyond the unique facts of this case.

First  and  foremost,  the  majority  opinion  cites  absolutely  *no*
persuasive, controlling West Virginia law to support its discussion of the law
of negligent supervision.   The majority fails to quote any case from this Court
outlining the elements of a cause of action for negligent supervision for an

46

obvious and very important reason: because none exists.   In fact, the majority opinion admits that "our body of caselaw concerning negligent supervision is sparse[.]"

Despite this dearth of any real precedent, the majority opinion plows ahead and quotes the circuit court's statement of what it thought the law is. Specifically, the circuit court pronounced that a "negligent supervision claim prevails when the party shows that the employer failed to supervise its employee, and as a result, *the employee committed a negligent act and caused injury*."  As "authority" for this pronouncement, the circuit court cited a *per curiam* decision from this Court, *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719 (2000), and an unpublished opinion from a federal district court that cites *Taylor*.  *Per curiam* and unpublished federal cases carry almost no persuasive weight. Nevertheless, the majority opinion doubles down on its reliance upon the circuit court's pronouncement and declares that the circuit court's interpretation of *Taylor* is "our current definition" and "current construction of a negligent supervision cause of action[.]" (Emphasis added).

However, nowhere in *Taylor* did the Court outline or construe the elements of a negligent supervision cause of action.  To the contrary, in *Taylor*, the Court expressly *refused* to define that cause of action.

245 W.Va. at 615–16, 859 S.E.2d at 783–84 (Hutchinson, J., concurring in part, dissenting in part) (emphasis in original).

As Justice Hutchinson pointed out, *Taylor* was issued as a *per curiam* opinion in July of 2000:

> Second, when *Taylor* was issued as a *per curiam* opinion in July of
> 2000, the policy of this Court was to treat "everything in a *per curiam* opinion
> beyond the syllabus point [as] merely obiter dicta." *Lieving v. Hadley*, 188
> W. Va. 197, 201 n.4, 423 S.E.2d 600, 604 n.4 (1992). The Court's policy
> was to use *per curiam* opinions to "decide only the specific case before the
> Court" and, therefore, considered those opinions in the same way the federal
> appellate courts treated unpublished opinions: as opinions that could not be
> cited as authority. *Id*. In those days, this Court also routinely said that a "*per
> curiam* opinion that appears to deviate from generally accepted rules of law
> is not binding on the circuit courts, and should be relied upon only with great
> caution." *Id*. When *Taylor* was being drafted and considered in July of
> 2000, it was this Court's mantra that "if rules of law or accepted ways of
> doing things are to be changed, then this Court will do so in a signed opinion,
> not a *per curiam* opinion." *Id*.

245 W.Va. at 616–17, 859 S.E.2d at 784–85 (Hutchinson, J., concurring in part, dissenting in part). In October of 2001, the West Virginia Supreme Court of Appeals abrogated the rule expressed in *Lieving*. *See Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001). However, "the fact remains, when the Court heard oral arguments in *Taylor*, considered the parties' briefs, drafted the language used in the *Taylor* opinion, and finally voted to issue *Taylor* as a *per curiam* opinion, the guiding rule in the back of every justice's mind

48

was that there was nothing in **Taylor** about negligent supervision that was precedential." 245 W.Va. at 617, 859 S.E.2d at 785 (Hutchinson, J., concurring in part, dissenting in part).

In this case, Defendants ask this Court to rely upon a Supreme Court of Appeals of West Virginia opinion that was founded upon *dicta*. As the "current law" stands in West Virginia for negligent supervision, a claim for negligent supervision can only be based on the negligent acts of an employee; thus, if the employee engages in an intentional or reckless tort, then the employer is immune. This Court simply cannot agree. Thus, this Court hereby **CERTIFIES** to the Supreme Court of Appeals of West Virginia the following three (3) questions: (1) Is a claim for negligent supervision against an employer viable under West Virginia common law; (2) If yes, what are the elements of the claim? (3) Can intentional or reckless torts committed by an employee form the basis for a claim for negligent supervision against the employer? This Court hereby **DEFERS** ruling on Defendants' Motion to Dismiss with respect to the claim for negligent supervision.

### vii.    Aiding and Abetting Tortious Conduct

"West Virginia clearly recognizes aiding and abetting tortious conduct." **Clark v. Milam**, 847 F.Supp. 409 (S.D. W.Va. 1994) (Haden, C.J.). In Syllabus Point 5 of **Courtney v. Courtney**, 186 W.Va. 597, 413 S.E.2d 418 (1991), the Court stated:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

*Accord* Syl. Pt. 2, ***Barath v. Performance Trucking Co.***, 188 W.Va. 367, 424 S.E.2d 602 (1992).

The Court in ***Courtney*** went on to adopt six (6) factors set forth in ***Fassett v. Delta Kappa Epsilon***, 807 F.2d 1150, 1163 (3d Cir. 1986), *cert. denied*, ***Turgiss v. Fassett***, 481 U.S. 1070 (1987) to be used when determining whether a person is liable for assisting or encouraging a tort:

> "a. the nature of the act encouraged;
>
> "b. the amount of assistance given by the defendant;
>
> "c. the defendant's presence or absence at the time of the tort;
>
> "d. the defendant's relation to the other tortfeasor;
>
> "e. the defendant's state of mind; and
>
> "f. the foreseeability of the harm that occurred."

186 W.Va. at 605, 413 S.E.2d 426.[15]

This Court thus concludes, assuming all allegations as true, resolving all doubts and inferences in favor of Marietta, and viewing the allegations in a light most favorable to Marietta, Marietta has sufficiently alleged a claim for aiding and abetting tortious conduct upon which relief may be granted. Thus, this Court will **DENY** Defendants' Motion to Dismiss Marietta's aiding and abetting tortious conduct claim.

### viii.   Vicarious Liability

"'An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship.

---

[15] The Court in ***Courtney*** adopted these factors, but concluded that "they are not necessarily exhaustive." 186 W.Va. at 605, 413 S.E.2d 426.

Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.'" Syl. Pt. 5, **Courtless v. Jolliffe**, 203 W.Va. 258, 260, 507 S.E.2d 136, 138 (1998) (quoting Syl. Pt. 3, **Musgrove v. Hickory Inn, Inc.**, 168 W.Va. 65, 281 S.E.2d 499 (1981)).

"'An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment.'" Syl. Pt. 6, **Courtless**, 203 W.Va. at 260, 507 S.E.2d at 138 (quoting Syl., **Cochran v. Michaels**, 110 W.Va. 127, 157 S.E. 173 (1931)).

At this stage of the proceedings, this Court finds that Marietta has sufficiently alleged a claim for vicarious liability.  In the Amended Complaint,  Marietta alleges that Defendants "approved, authorized, and sanctioned Kruger's involvement with the Qui Tamp Group and the efforts to initiate the federal action and federal investigation, as well as participating in, and supporting those efforts."  *See* [Doc. 28 at 32].  Because of this, Marietta alleges they have suffered damages and harm.  *See* [id. at 33].  Thus, this Court will **DENY** Defendants' Motion to Dismiss Marietta's <u>vicarious liability</u> claim.

## IV.    Conclusion

For the reasons stated above, this Court **DENIES IN PART AND DEFERS IN PART** Defendants' Motion to Dismiss [**Doc. 32**].  More specifically,

- This Court **DENIES** Defendants Motion with respect to *res judicata* and this Court will not enforce *res judicata*;

- This Court **DENIES** Defendants Motion with respect to the argument that Marietta's claims are preempted by the FCA, the public policy of the FCA, and causation under FCA;

- This Court **DENIES** Defendants request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) with respect to FCA preemption;

- This Court finds Defendants argument with respect to the timeliness of Marietta's claims to be premature;

- This Court **DENIES AND DEFERS** with respect to Defendants argument that Marietta fails to state a claim:

  - Count I - Malicious Prosecution: **DENIED**;

  - Count II - Tortious Interference with Business Relationships and Expectancies: **DENIED**;

  - Count III - Abuse of Process: **DENIED**;

  - Count IV - Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a: **DENIED**;

  - Count V: Civil Conspiracy: **DENIED**;

  - Count VI: Negligent Supervision: **DEFERRED** pending certification to the Supreme Court of Appeals of West Virginia;

  - Count VII: Aiding and Abetting Tortious Conduct: **DENIED**;

  - Count VIII: Vicarious Liability: **DENIED**;

- This Court hereby **CERTIFIES** to the Supreme Court of Appeals of West Virginia the following three (3) questions:

-     (1) Is a claim for negligent supervision against an employer viable under West Virginia common law;

-     (2) If yes, what are the elements of the claim?

-     (3) Can intentional or reckless torts committed by an employee form the basis for a claim for negligent supervision against the employer?

This Court hereby **STAYS** the above-styled matter in order for the Supreme Court of Appeals of West Virginia to address the three (3) questions posed by this Court. The Scheduling Conference currently set for **September 21, 2023, at 2:00 p.m.** is hereby **CANCELED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record herein.

**DATED:** September 18, 2023.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE